DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Allan S. Brilliant
Shmuel Vasser
Jeffrey T. Mispagel

*Proposed Attorneys for the Debtors and Debtors
in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- X
                                                          :
In re:                                                    :    Chapter 11
                                                          :
LEGEND PARENT, INC., *et al.*,                            :    Case No. 14-10701 (      )
                                                          :
         Debtors.[1]                                      :    Joint Administration Requested
                                                          :
--------------------------------------------------------- X

### DECLARATION OF DAVID WOODWORTH IN ACCORDANCE WITH LOCAL RULE 1007-2 IN SUPPORT OF FIRST DAY MOTIONS

David Woodworth hereby declares under penalty of perjury that the following is

true and correct:

1.      I am the Chief Financial Officer ("**CFO**") of MModal Holdings, Inc.

("**Holdings**"), a Delaware corporation, which is the parent company of the above-captioned

debtors and debtors in possession (collectively, the "**Debtors**") and their non-debtor affiliates

(collectively with Holdings and the Debtors, the "**Company**"). I have been employed by the

---

[1]    The Debtors in these cases along with the last four digits of their federal tax identification number are: Legend Parent, Inc. (8624); MModal Holdings, Inc. (7380); MModal Inc. (6666); Multimodal Technologies, LLC (2076); MModal CB Inc. (5948); Poiesis Informatics, Inc. (0978); MModal MQ Inc. (1298); MModal Systems & Services Inc. (3443); Mirrus Systems Inc. (5862); MedQuist of Delaware, Inc. (3311); MModal IP LLC (0512); MModal Services, Ltd. (0433); MedQuist CM LLC (5362); and All Type Medical Transcription Services, Inc. (0722). The Debtors' corporate headquarters is located at 5000 Meridian Boulevard, Suite 200, Franklin, TN 37067.

18933814

Debtors since November, 2011. I joined the Company as VP of Finance and was promoted to CFO in October 2013 after being promoted to the acting Chief Financial Officer role in June 2013. As CFO, I am currently responsible for, among other things, financial planning, oversight of financial reporting, operational reporting, treasury, and tax. Furthermore, when I took on the CFO role, my previous role as VP of Finance was not filled, and therefore I have continued to be heavily involved in the finance function, particularly Financial Planning and Analysis ("**FP&A**") activities. My background and experience in FP&A and my more recent experience as CFO have allowed me to become familiar with the Company's business and financial affairs. If called to testify, I would attest to the facts described herein.

2.    On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York. The Debtors continue to operate their businesses and manage their properties as "debtors in possession," as I understand that term. The Debtors have sought an order directing that their cases be jointly administered for procedural purposes only by this Court. No trustee, examiner, or official committee has been appointed in these cases.

3.    Holdings' principal asset is the equity in Legend Parent, Inc. The stock certificate representing the equity in Legend Parent, Inc. is and has at all time since Holdings' formation (July 2012) been held in New York City, NY.

4.    To minimize the effects of filing for bankruptcy protection on the Debtors' business and employees, the Debtors have requested various types of "first day" relief by motions that are typically heard on the first day, as well as motions that are heard subsequently

(collectively, the "**First Day Motions**").[2] Each First Day Motion seeks relief intended to allow the Debtors to perform and meet those obligations necessary to fulfill their duties as debtors in possession in the chapter 11 cases. As set forth below, I am generally familiar with the contents of each First Day Motion and believe that the relief sought in each First Day Motion is necessary to enable the Debtors to operate in bankruptcy with minimum disruption or loss of productivity or value and best serves the interest of the Debtor's creditors and other stakeholders.

5.       I submit this declaration (the "**Declaration**") in support of the Debtors' chapter 11 petitions and the relief requested in the First Day Motions, and to provide particular information to the Court and parties in interest in accordance with Rule 1007-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"). Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by my colleagues and the Debtors' employees, and from my review of relevant documents, or otherwise upon my opinion based upon my experience, my discussions with the Debtors' advisors, and my knowledge of the Debtors' operations and financial condition.

6.       Part I of this Declaration describes the Company's business, its corporate and prepetition capital structure, and the circumstances leading to the filing of these cases, as required by Local Rule 1007-2. Part II of this Declaration sets forth my basis for testifying to the facts underlying and described in of each of the First Day Motions. Part III of this Declaration and accompanying exhibits contain schedules providing additional information about the Debtors that is required to be provided pursuant to Local Rule 1007-2.

---

[2]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the applicable First Day Motion.

I.    **THE DEBTORS' BUSINESS, CAPITAL STRUCTURE, AND CIRCUMSTANCES LEADING TO THE FILING**

A.    **The Debtors' Corporate Structure**

7.    The Debtors are comprised of fourteen separate entities. Holdings, the ultimate parent company of the Debtors, holds 100% of the equity in Legend Parent, Inc. Legend Parent, Inc. holds 100% of the equity in MModal Inc., which in turn directly or indirectly owns all of the equity interests of the rest of the Debtors and their non-Debtor affiliates. An organizational chart identifying each entity within the Company is attached hereto as Exhibit A.[3]

8.    The Debtors are all privately owned, and no debt or equity securities of any Debtor are currently listed or traded on any public securities exchange or market. Affiliates of One Equity Partners, a private equity investment fund, own the majority of Holdings' equity interests and all of its preferred stock. The equity structure of Holdings is comprised of: (i) Series A Preferred Stock, all of which is owned by One Equity Partners V, L.P. ("**OEP**"); (ii) Class L Common Stock, a voting stock, of which 51.36% is owned by Aisling Capital III, L.P., 42.02% is owned by W Capital Legend, L.P., and 6.62% is owned by OEP II Partners Co-Invest, L.P.; and (iii) Class A Common Stock, a voting stock, of which 96.36% is owned by OEP, and the remaining 3.64% is owned by various members of the Company's management.

B.    **The Debtors' Business**

9.    The Company, which is headquartered in Franklin, Tennessee, is a leading provider of clinical documentation solutions for the U.S. healthcare industry and provides a comprehensive suite of products and services to its customers, including clinical narrative capture

---

[3]    Exhibit A includes all fourteen Debtor entities, as well as nine foreign subsidiaries of MModal Inc. that are not Debtors in these cases: MModal Global Services Pvt. Ltd. (India), CBay Holdings Ltd. (Mauritius), MModal Australia Pty Ltd. (Australia), MModal Global Services Inc. (Philippines), Cbay Infotech Ventures Pvt. Ltd. (India), M*Modal N.V. (Belgium), MModal Canada Co. (Canada), MModal Limited (U.K.), and MModal Services Canwest ULC (Canada).

services, Speech and Language Understanding™ technology, and clinical documentation workflow solutions.  The Company's cloud-based, end-to-end technology-enabled solutions convert physicians' dictation into a comprehensive patient story through high-quality clinical documentation with rich context that can be leveraged across a healthcare enterprise for reimbursement, clinical decision support, business intelligence, and distribution.

10.      The Company has operations in six countries and employs more than 9,900 employees, most of whom are Medical Transcriptionists or Medical Editors.  As of the Petition Date, the Debtors' workforce consisted of approximately 4,200 employees (largely home-based) with employees in all 50 states.[4]

11.      The Company's customer base includes over 3,800 hospitals, clinics, and physician practices, and is composed of a wide variety of healthcare providers, including integrated delivery networks, academic centers, and specialty hospitals.  The Company has a particularly high presence in the large hospital market.  The Company enjoys a high retention rate with its customers, and the average tenure of its top 50 customers has been more than 4 years.

12.      On a consolidated basis, the Company generated approximately $411 million in revenue and $85.6 million in Adjusted Earnings Before Interest, Taxes, Depreciation and Amortization ("**AEBITDA**") in 2013, representing a decrease from approximately $452.8 million in revenue and $96.9 million in AEBITDA in 2012 and approximately $443.9 million in revenue and $118.1 million in AEBITDA in 2011.

---

[4]    The Debtors' workforce primarily consists of regular employees, but also includes temporary employees and independent contractors.  None of the Debtors' employees are members of a union or a collective bargaining unit.

13.    The Company's activities can be considered as three separate revenue streams:

- ***Core Transcription Outsource Services ("TOS")*** – this constitutes transcription outsource labor, speech understanding, and workflow technology.  In 2013, TOS accounted for more than 80% of consolidated revenue.

- ***Other Technology & Services*** – this constitutes "legacy" products and services from past acquisitions.  This category includes labor for outsourced medical coding, and third party licensing of products with clinical documentation, speech recognition, and natural language understanding technology.

- ***Products*** - the Company's third revenue category includes its newer products, which are marketed under the M*Modal Fluency™ and M*Modal Catalyst brands.  Examples of such products include a specialized platform for radiologists for imaging documentation and workflow management, and products that use data-driven analytics to improve clinical documentation, revenue cycle management, and patient care.

14.    TOS, the Company's largest source of revenue, involves processing physicians' dictation through medical transcribers and speech recognition technology.  Over the last twenty years, the clinical documentation industry has evolved from almost exclusively in-house production to outsourced services and from labor-intensive services to technologically-enabled solutions.  The outsourced percentage of the market is expected to grow to more than a third of the overall medical transcription market by 2014.  The Company operates a scalable global delivery network of transcriptionists across the U.S., India and the Philippines.

15.    Physicians generally use one of two methods to capture clinical data in a digital format: dictation or templated direct data entry through clinical documentation systems.  Dictation allows physicians to use their voice to document patient interactions, which is converted into a text format for insertion into the Electronic Health Record ("**EHR**").  Direct data entry

6

directly populates an EHR through templates or drop-down menus, typically with a laptop or other hardware device. The adoption of direct data entry with EHRs by the Company's customers has proven to be highly erosive to TOS volumes. The speed and extent to which the Company's current customers and our target market adopts direct data entry with EHRs is somewhat uncertain within our customer base and our target market. This makes it difficult to assess the erosion the Company will likely experience in the future.

16.     The Company uses advanced automation technologies, such as automated speech recognition ("**ASR**") and workflow platforms, and low-cost offshore resources are available to drive substantial improvements in productivity and cost. ASR converts the physician narrative into a text form which is available for editing by a medical transcriptionist. Speech automation and an increase in offshore production have substantially decreased the overall cost of production and have further differentiated the Company from many other outsourcing providers. As the industry's cost of production has declined, the average market price for medical transcription services has also declined.

17.     The Company's speech and workflow products are marketed under the M*Modal Fluency™ umbrella brand and include a variety of different products. The M*Modal Fluency™ family of products captures the patient story through front-end speech, voice capture, and transcription services.

18.     The Company's speech understanding and decision support products are marketed under the M*Modal Catalyst™ umbrella brand. The M*Modal Catalyst™ family of products enable the Company's customers and partners to monetize that captured story through coding, analytics, and integration of structured data into the EHR.

**C.**      **Prepetition Capital Structure**

19.     As of the Petition Date, the Debtors are indebted under that certain Credit Agreement, dated as of August 17, 2012, as amended by Amendment No. 1 to the Credit Agreement, dated as of May 15, 2013 (the "**Credit Agreement**"), by and among MModal Inc., as borrower, Legend Parent Inc., as guarantor, Royal Bank of Canada (the "**Administrative Agent**") and other lenders party thereto (as amended, modified, or supplemented from time to time, and together with all security agreements and other documents ancillary thereto, the "**Credit Facility**").  The obligations under the Credit Facility are guaranteed by each of the other Debtor entities, except for Holdings.

20.     The Credit Facility consists of a $75 million revolving facility and a $445 million term loan.  As of the Petition Date, the revolving facility was fully drawn, and approximately $424.6 million in principal amount was outstanding under the term loan.  The revolving commitments mature on August 17, 2017, and the term loan commitments mature on August 17, 2019.

21.     The obligations under the Credit Facility are secured by a first lien on substantially all assets of the Debtors, including (i) accounts, (ii) equipment, goods, inventory, and fixtures, (iii) documents, instruments, and chattel paper, (iv) letters of credit and letter of credit rights, (v) securities collateral, (vi) investment property, (vii) intellectual property collateral, (viii) certain commercial torts claims, (ix) general intangibles, (x) money and deposit accounts, (xi) supporting obligations, (xii) books and records relating to the foregoing, (xiii) other personal property; and (xiv) all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits, and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty, or guaranty payable from time to time with respect to any of the foregoing.

22.     The Debtors have also pledged either 100% or 65% of the equity interests in their subsidiaries, including certain of their foreign non-Debtor subsidiaries, to the Administrative Agent.  The Debtors' corporate organizational chart attached hereto as <u>Exhibit A</u> identifies the borrowers and guarantors, as well as which entities have had their equity interests pledged.

23.     The Debtors are also indebted under that certain Indenture, dated as of August 17, 2012 (the "**Indenture**"), by and among MModal, Inc., as issuer, Legend Parent, Inc., as guarantor, and U.S. Bank National Association (the "**Trustee**"), pursuant to which MModal Inc. issued $250 million in senior unsecured notes (the "**Notes**").   The Notes bear interest at a rate of 10.75%, payable semi-annually, and become due in 2020.  Legend Parent, Inc. and all of the other Debtors, except for Holdings, are guarantors of the obligations under the Indenture.  As of the Petition Date, the outstanding principal balance due under the Notes was $250 million.

**D.     Events Leading To The Filing Of The Debtors' Cases**

24.     In August 2012, the Company was acquired in a $1.14 billion going private transaction (the "**Transaction**") by OEP.  The Transaction was financed by a combination of debt and equity, including an equity contribution from OEP of approximately $447 million.  The Debtors' prepetition funded indebtedness under the Credit Facility and the Indenture was incurred in connection with the financing for the Transaction.

25.    Since the Transaction, a number of factors have contributed to a decline in the Debtors' earnings and liquidity position ultimately making this voluntary petition for relief under the Bankruptcy code a necessary step for the Company to deleverage its balance sheet. These forces included:

a.    Higher than planned, industry-wide TOS erosion, primarily from product substitution as clinical documentation is more frequently populated electronically

b.    Lower than anticipated market demand for capital purchases of front end speech solutions resulting in a shift in the Company's go-to-market strategy for its newer products from one-time revenue from capital sales to more stable, recurring revenue from subscription sales.

26.    This decline in earnings resulted in an increase in its net leverage ratio creating a risk of breaching financial covenants under the Credit Facility, which set declining maximum ratios for total net leverage.  The Company announced in April 2013 that it would likely breach the net leverage covenant for the first quarter of 2013, and, in May 2013, the Credit Agreement was amended to provide for relaxed net leverage ratios.  As part of the amendment process, OEP also contributed $20 million in an equity cure to pay down part of the debt under the Credit Facility.

27.    The increasing net leverage ratio was driven by a decline in the volume of its TOS business with a corresponding impact on revenue and AEBITDA. This decline in TOS volume and revenue was attributable to greater than planned industry-wide erosion, including product substitution and competitive pricing pressure.  The Company instigated efforts to improve

its sales training and sales presence in parallel with the development and sale of software-based products and services with higher margins in addition to its core labor-based transcription services. The Company also implemented cost-saving measures in the second quarter of 2013 that resulted in approximately $7 million in annual savings. While the business's absolute revenue and adjusted EBITDA were declining, the Company's efforts resulted in a relatively steady adjusted EBITDA margin near 21%.

28.    Despite the Company's efforts to outpace the erosive nature of TOS with high margin product sales paired with proactive cost reductions, it struggled to do so as the customer market faced cost and capital constraints associated with regulatory changes thereby extending the sales cycle and/or reducing the size of capital product sales. In the face of this market erosion and having identified the need to shift the go-to-market strategy in support of the financial constraints being faced by its current and future customer base, in its third quarter 2013 earnings call, the Company noted it would likely face breach a financial covenant under its secured Credit Facility in the first half of 2014 with the recognition of the Company's inability to sustain its significant debt obligations under the Credit Facility and the Indenture.

29.    Anticipating the need to restructure its balance sheet, the Company hired restructuring advisors in the fourth quarter of 2013. In addition, the Company began negotiating and exploring strategic alternatives with certain holders of Notes and certain lenders under the Credit Facility. These negotiations are on-going.

## II.    FIRST DAY MOTIONS AND OTHER PLEADINGS

30.    To minimize the adverse effects of the commencement of their chapter 11

cases on their business and employees, the Debtors have requested various types of relief in their

First Day Motions, all of which are either being filed concurrently with this Declaration, or will be

filed shortly after Petition Date.  I believe that the relief requested in each of the First Day Motions

is necessary, appropriate, and is in the best interest of the Debtors' estates, creditors, and other

parties in interest.

31.    The First Day Motions that are sought to be heard on the first day are:

- Debtors' Motion for Order Directing Joint Administration of Related Chapter 11 Cases

- Debtors' Motion for Order Authorizing the Debtors to (I) Prepare a List of Creditors in Lieu of Submitting a Formatted Mailing Matrix, (II) File a Consolidated List of 30 Largest Unsecured Creditors and (III) Mail a Form of Notice to Creditors Notifying Them of Commencement of Chapter 11 Cases

- Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to Perform and to Honor Certain Prepetition Customer Programs in the Ordinary Course of Business

- Debtors' Motion for Entry of Interim and Final Orders Authorizing the Payment of Certain Prepetition Taxes

- Debtors' Motion for Interim and Final Orders Authorizing (I) the Payment Of Prepetition Wages and Salaries, (II) the Payment and Honoring of Prepetition Employee Policies and Benefits, and (III) the Continuation of Workers' Compensation Insurance Programs

- Debtors' Motion for Interim and Final Orders Authorizing the Debtors to (I) Maintain, Continue, and Renew Their Property, Casualty, Liability and Other Insurance Policies And Agreements, and (II) Honor All Obligations in Respect Thereof

12

- Debtors' Motion for Entry of Interim and Final Orders Approving (I) the Debtors' Continued Use of Their Cash Management System, (II) the Continuation of the Intercompany Transactions, (III) Administrative Expense Status for Postpetition Intercompany Claims, and (IV) the Debtors' Continued Use of Existing Bank Accounts, Checks, and Business Forms

- Debtors' Motion for Order (I) Establishing Bar Date for Filing Requests for Payment of Administrative Expense Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, (II) Approving Procedures for Filing Requests for Payment, and  (III) Approving the Form, Manner, and Sufficiency of Notice Thereof

- Debtors' Motion for Interim and Final Orders (I) Authorizing Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, and 363, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001(b)

- Debtors' Motion for Authority to Limit Notice and to Establish Case Management Procedures

- Debtors' Motion for Order Extending the Time to File Schedules and Statements and Reports of Financial Information

- Debtors' Application for Appointment of Prime Clerk LLC as Claims and Noticing Agent

32.    Additional motions filed or to be filed which are not expected to be heard on the first day are:

- Debtors' Motion for Entry of an Order Establishing Notification and Hearing Procedures for Transfers of or Claims of Worthless Stock Deductions With Respect to Certain Equity Securities

- Debtors' Motion for Entry of an Order (I) Determining that Utility Companies Have Been Provided with Adequate Assurance of Payment, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service on Account of Prepetition Invoices, (III) Approving Adequate Assurance Procedures, (IV) Establishing Procedures for Utility Companies to Seek to Opt Out of Adequate Assurance Procedures, and (V) Determining that Debtors Are Not Required to Provide Any Additional Adequate Assurance

- Debtor's Motion for An Order Pursuant to 11 U.S.C. §§ 105(A) and 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals

13

- Debtors' Application for Authorization to Employ and Retain Dechert LLP as Attorneys for the Debtors and Debtors In Possession Effective *Nunc Pro Tunc* to the Petition Date

- Debtors' Application for Entry of An Order Authorizing the Retention and Employment of Alvarez & Marsal North America, LLC as Restructuring Advisor for the Debtors *Nunc Pro Tunc* to the Petition Date

- Debtors' Application for Entry of An Order Authorizing the Retention and Employment of Lazard Frères & Co LLC as Investment Banker for the Debtors *Nunc Pro Tunc* to the Petition Date

- Debtors' Application for An Order Authorizing Employment and Retention of Prime Clerk LLC as Administrative Advisor *Nunc Pro Tunc* to the Petition Date

- Debtors' Application for Authorization to Employ and Retain Deloitte Tax LLP as Tax Advisor for the Debtors and Debtors In Possession Effective *Nunc Pro Tunc* to the Petition Date

33.    I have reviewed each of the First Day Motions (including the exhibits and schedules attached thereto) listed above, and, to the best of my knowledge, I believe that the facts set forth in the First Day Motions are true and correct.  If I were called upon to testify, I could and would, based on the foregoing, testify competently to the facts set forth in each of the First Day Motions.

34.    Furthermore, as a result of my personal knowledge, information supplied to me by other members of the Debtors' management and from my colleagues that perform services for the Debtors, from my review of relevant documents, or upon my opinion based upon my experience, discussions with the Debtors' advisors and knowledge of the Debtors' operations and financial condition, I believe the relief sought in the First Day Motions is necessary for the Debtors to effectuate a smooth transition into chapter 11 bankruptcy, to avoid irreparable harm to their businesses and estates, and is in the best interests of the Debtors' creditors, estates, and other stakeholders.

35.      Accordingly, for the reasons stated herein and in each of the First Day Motions filed concurrently or in connection with the commencement of this case, I believe that the relief sought in the First Day Motions should be granted by the Court in its entirety, together with such other and further relief for the Debtors as this Court deems just and proper, in the most expeditious manner possible.

### III.    INFORMATION REQUIRED BY LOCAL RULE 1007-2

### A.    General Information

36.      I understand that Local Rule 1007-2 requires the Debtors to disclose certain information related to their cases, which is attached in the exhibits hereto.

37.      Attached hereto as Exhibit B and incorporated herein by reference is a list of the names and addresses of the members of, and attorneys for, any committee organized prior to the Petition Date.

38.      Attached hereto as Exhibit C and incorporated herein by reference is a list of the names, addresses, and telephone numbers of the creditors holding the 30 largest unsecured claims against the Debtors, excluding insiders, on a consolidated basis.  The list includes the amount of the claim, the nature of the claim, and, if appropriate, an indication of whether such claim is contingent, unliquidated, disputed, or partially secured.

39.      Attached hereto as Exhibit D and incorporated herein by reference is a list of the names and addresses of the secured creditors, exclusive of insiders, holding the five largest secured claims against the Debtors.  This list includes the amount of each claim, a brief description and an estimate of the value of the collateral securing the claim, and whether the claim is disputed, contingent, or unliquidated.

40.     Attached hereto as <u>Exhibit E</u> and incorporated herein by reference is an unaudited, consolidated summary of the assets and liabilities of the Debtors.

41.     Attached hereto as <u>Exhibit F</u> and incorporated herein by reference is a list of the number and classes of shares of stock, debentures, or other securities of the Debtors that are publicly held, and the number of holders thereof, listing separately those held by each of the Debtors' officers and directors and the amounts so held.

42.     Attached hereto as <u>Exhibit G</u> and incorporated herein by reference is a list of all of the Debtors' property that is in the possession of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, along with the name, address, and telephone number of each such entity and the court in which any proceeding relating thereto is pending.

43.     Attached hereto as <u>Exhibit H</u> and incorporated herein by reference is a list of the premises owned, leased, or held under other arrangement, from which the Debtors operate their business.

44.     Attached hereto as <u>Exhibit I</u> and incorporated herein by reference is a list of the locations of the Debtors' substantial assets, the location of their books and records, and the nature, location, and value of any assets held by the Debtors outside the territorial limits of the United States.

45.     Attached hereto as <u>Exhibit J</u> and incorporated herein by reference is a list of actions or proceedings, pending or threatened, against the Debtors or their property where a judgment against them or a seizure of their property is imminent.

46.     Attached hereto as <u>Exhibit K</u> and incorporated herein by reference is a list of the names of the Debtors' existing senior management, their tenure with the Debtors, and a summary of their relevant responsibilities and experience.

16

**B.**     **The Debtors' Intention To Continue To Operate Their Business**

47.     The Debtors intend to continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

48.     Attached hereto as <u>Exhibit L</u> and incorporated herein by reference is the estimated amount of weekly payroll to the Debtors' employees (not including officers, directors, stockholders, and partners) for the 30 day period following the Petition Date; and the estimated amount to be paid to officers, stockholders, directors, members of any partnerships, and financial and business consultants retained by the Debtors for the 30 day period following the Petition Date.

49.     Attached hereto as <u>Exhibit M</u> and incorporated herein by reference is a list of the estimated consolidated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remain unpaid, other than professional fees, for the 30 day period following the Petition Date.

Dated: March 20, 2014

Name: David Woodworth
Title:    Chief Financial Officer

17

## EXHIBIT A

**Corporate Organization Chart**



Legal Entity Chart
March 2014

19114822

## **EXHIBIT B**

### **Committees Organized Prior to the Petition Date**

Pursuant to Local Bankruptcy Rule 1007-2(a)(3), to the best of my personal knowledge, the following committees have been organized prior to the Petition Date:

- Steering Committee for Secured Lenders under the Prepetition Credit Agreement;

  Counsel:  Richard Levy, Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800 Chicago, IL 60606

- Ad Hoc Committee of certain unaffiliated holders of (i) the Term B loan under the Prepetition Credit Agreement and (ii) Notes issued under the Indenture

  Counsel:  Michael Stamer, James Savin, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036-6745

19114822

# EXHIBIT C

## Lists of 30 Largest Unsecured Claims (Excluding Insiders)

Pursuant to Local Bankruptcy Rule 1007-2(a)(4), the following is a list of creditors holding, as of approximately March 19, 2014, the 30 largest unsecured claims against the Debtors, on a consolidated basis, excluding the claims of insiders as defined in 11 U.S.C. § 101.[1]

| ITEM | NAME OF CREDITOR,COMPLETE MAILING ADDRESS, AND EMPLOYEE, AGENT, OR DEPARTMENT OF CREDITOR FAMILIAR WITH CLAIM | NATURE OF CLAIM (bond debt, trade debt, bank loan, government contracts, etc.) | INDICATE IF CLAIM IS CONTINGENT, UNLIQUIDATED, DISPUTED, OR SUBJECT TO SETOFF | AMOUNT OF CLAIM(if secured, also state value of security) |
|---|---|---|---|---|
| 1 | US Bank NA Corporate Trust Dept 214 N Tryon St 27th Floor Charlotte, NC 28202 EMAIL: james.mcginley@usbank.com | Notes | | $265,900,000.00 |
| 2 | ADVANCED MEDIA INCORPORATED Attn President or General Counsel 6F SUNSHINE CITY BUNLEA KAIKAN 3-1-4 HIGASHI-IKEBUKURO TOKYO,  170-8630 JAPAN EMAIL:  privacy@advanced-media.co.jp FAX:  (801) 226-51481378 PHONE:  (801) 655-2595 | Deferred Acquisiton Payments | | $2,200,455.65 |
| 3 | CIGNA VOLUNTARY Attn President or General Counsel 2222 W DUNLAP AVE SUITE 350 PHOENIX, AZ 85021-2866 EMAIL: edwin.detrick@cigna.com FAX: 800-390-9745 PHONE: 800-244-6224 | Trade Debt | | $1,500,000.00 |
| 4 | MERIDIAN HEALTHCARE SOULTIONS LLC Attn President or General Counsel 6430 E.75TH STREET INDIANAPOLIS, IN 46250 FAX: (317) 638-1843 PHONE: (317) 686-3253 | Deferred Acquisiton Payments | Contingent, Disputed | $650,000.00 |

---

[1]   The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors.  All claims are subject to customary offsets, rebates, discounts, reconciliations, credits, and adjustments, which are not reflected on this Schedule.

| ITEM | NAME OF CREDITOR,COMPLETE MAILING ADDRESS, AND EMPLOYEE, AGENT, OR DEPARTMENT OF CREDITOR FAMILIAR WITH CLAIM | NATURE OF CLAIM (bond debt, trade debt, bank loan, government contracts, etc.) | INDICATE IF CLAIM IS CONTINGENT, UNLIQUIDATED, DISPUTED, OR SUBJECT TO SETOFF | AMOUNT OF CLAIM(if secured, also state value of security) |
|---|---|---|---|---|
| 5 | ALEX WAIBEL 3422 LASHAN DR MURRYSVILLE, PA 15668 | Deferred Acquisiton Payments | | $645,252.33 |
| 6 | CENTURYLINK Attn President or General Counsel 100 CenturyLink Drive Monroe, LA 71203 EMAIL: TalkToUs@CenturyLink.com FAX: 1.866.826.4839 PHONE: 800-871-9244 | Trade Debt | | $591,847.15 |
| 7 | JEREMY RICHARDSON 5000 Meridian Blvd.Suite 200 FRANKLIN, TN 37067 | Deferred Acquisiton Payments | | $579,400.00 |
| 8 | DAVID LIONETTI 5000 Meridian Blvd. Suite 200 FRANKLIN, TN 37067 EMAIL: david.lionetti@mmodal.com | Deferred Acquisiton Payments | | $579,400.00 |
| 9 | UNITED HEALTH CARE INSURANCE CO. Attn President or General Counsel 22703 NETWORK PLACE CHICAGO, IL 60673-1227 EMAIL: Robert_W_Oberrender@UHC.com FAX: (860)702-5792 PHONE: 877-842-3210 | Trade Debt | | $500,000.00 |
| 10 | SUNGARD AVAILABILITY SERVICES LP Attn President or General Counsel 680 East Swedesford Road Wayne, PA 19087 EMAIL: as.accounts_payable@sungard.com FAX: 1 610-225-1133 PHONE: 484-582-2000 | Lease | | $399,857.00 |
| 11 | NAOMI WAIBEL 3422 LASHAN DR. MURRYSVILLE, PA 15668 | Deferred Acquisiton Payments | | $332,387.75 |
| 12 | SALESFORCE.COM Attn President or General Counsel PO BOX 203141 DALLAS, TX 75320-3141 EMAIL: info@emea.salesforce.com FAX: 415-901-7040 PHONE: 800-667-6389 | Trade Debt | | $250,756.00 |

| ITEM | NAME OF CREDITOR,COMPLETE MAILING ADDRESS, AND EMPLOYEE, AGENT, OR DEPARTMENT OF CREDITOR FAMILIAR WITH CLAIM | NATURE OF CLAIM (bond debt, trade debt, bank loan, government contracts, etc.) | INDICATE IF CLAIM IS CONTINGENT, UNLIQUIDATED, DISPUTED, OR SUBJECT TO SETOFF | AMOUNT OF CLAIM(if secured, also state value of security) |
|---|---|---|---|---|
| 13 | JOHN HUFFMAN 19757 NW SAUVIE ISLAND RD PORTLAND, OR 97231 | Deferred Acquisiton Payments | | $244,400.00 |
| 14 | CIGNA HEALTH AND LIFE INSURANCE COMPANY Attn President or General Counsel 900 COTTAGE GROVE ROAD HARTFORD, CT 06152 FAX: 860-226-5400 PHONE: 860-226-6000 | Trade Debt | | $231,710.80 |
| 15 | LIBERTY MUTUAL INSURANCE COMPANY 175 BERKELEY STREET BOSTON, MA 02116 FAX: 617-574-5955 PHONE: 617-357-9500 | Trade Debt | | $230,298.80 |
| 16 | ERIC CARRAUX 5000 Meridian Blvd. Suite 200 FRANKLIN, TN 37067 EMAIL: eric.carraux@mmodal.com | Deferred Acquisiton Payments | | $142,489.52 |
| 17 | Crowne Plaza Astor Attn President or General Counsel 739 Canal Street NEW ORLEANS, LA 70130 | Trade Debt | | $124,497.18 |
| 18 | MONIKA WOSZCZYNA 5000 Meridian Blvd. Suite 200 FRANKLIN, TN 37067 EMAIL: monika.woszczyna@mmodal.com | Deferred Acquisiton Payments | | $98,768.15 |
| 19 | NIH REASEARCH & CONSULTING, LLC Attn President or General Counsel 6300 NW 120TH DRIVECORAL SPRINGS, FL 33076 EMAIL: rday@nihresearch.com & ckanstoroom@nihresearch.com FAX: 954-827-0197 PHONE: (954) 753-7747 | Trade Debt | | $90,000.00 |
| 20 | FUTURENET TECHNOLOGIES CORPORATION Attn President or General Counsel 1320 VALLEY VISTA DRIVE DIAMOND BAR, CA 91765 EMAIL: sales@futurenet-tech.com FAX: 909-396-4001 PHONE: 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 | Trade Debt | | $76,000.00 |

| ITEM | NAME OF CREDITOR,COMPLETE MAILING ADDRESS, AND EMPLOYEE, AGENT, OR DEPARTMENT OF CREDITOR FAMILIAR WITH CLAIM | NATURE OF CLAIM (bond debt, trade debt, bank loan, government contracts, etc.) | INDICATE IF CLAIM IS CONTINGENT, UNLIQUIDATED, DISPUTED, OR SUBJECT TO SETOFF | AMOUNT OF CLAIM(if secured, also state value of security) |
|---|---|---|---|---|
| 21 | AVFX INC<br>Attn President or General Counsel<br>96 HOLTON STREET<br>BOSTON, MA 02135<br>EMAIL: info@avfx.com<br>FAX: 617-254-7101<br>PHONE: 617-254-0770 | Trade Debt | | $74,344.55 |
| 22 | ORACLE CORPORATION<br>Attn President or General Counsel<br>100 Oracle Pkwy<br>Redwood City, CA 94065<br>FAX: 602-333-9001<br>PHONE: (650) 506-7000 | Trade Debt | | $74,316.07 |
| 23 | SCHEDULE SOURCE INC<br>Attn President or General Counsel<br>275 CENTURY CIRCLE - SUITE 102<br>LOUISVILLE, CO 80027-9453<br>EMAIL: support@schedulesource.com<br>PHONE: 303-991-3079 | Trade Debt | | $73,080.00 |
| 24 | LCFRE NASHVILLE CAROTHERS, L.P.<br>Attn President or General Counsel<br>810 CRESCENT CT DR<br>STE 560<br>FRANKLIN, TN 37067<br>EMAIL: tb@lionstonegroup.com;<br>gl@lionstonegroup.com;<br>dd@lionstonegroup.com<br>FAX: 713-533-5897<br>PHONE: 713-533-5860 | Lease | | $72,204.91 |
| 25 | LIGHTOWER FIBER NETWORKS<br>Attn President or General Counsel<br>80 CENTRAL STREET<br>FOXBOROUGH, MA 01719<br>EMAIL: billing-ne3@lighttower.com<br>FAX: 978-264-6100<br>PHONE: 978-264-6000 | Trade Debt | | $69,799.42 |
| 26 | KJELL SCHUBERT<br>5000 Meridian Blvd.<br>Suite 200<br>FRANKLIN, TN 37067 | Deferred Acquisiton Payments | | $65,845.43 |

| ITEM | NAME OF CREDITOR,COMPLETE MAILING ADDRESS, AND EMPLOYEE, AGENT, OR DEPARTMENT OF CREDITOR FAMILIAR WITH CLAIM | NATURE OF CLAIM (bond debt, trade debt, bank loan, government contracts, etc.) | INDICATE IF CLAIM IS CONTINGENT, UNLIQUIDATED, DISPUTED, OR SUBJECT TO SETOFF | AMOUNT OF CLAIM(if secured, also state value of security) |
|---|---|---|---|---|
| 27 | NOVATION LLC<br>Attn President or General Counsel<br>75-REMITTANCE DR<br>SUITE 1420<br>CHICAGO, IL 60675-1450<br>EMAIL: jwells@novationco.com ;<br>suppliersummit@novationco.com<br>FAX: 972-581-5013<br>PHONE: 972.581.5309 | Trade Debt | | $59,322.44 |
| 28 | INTERFIX LLC<br>Attn President or General Counsel<br>52 WEST STATE ROAD<br>PO BOX 894<br>NEWAYGO, MI 49337<br>EMAIL: info@interfix.biz<br>FAX: 231-652-6263<br>PHONE: 231-652-6260 | Trade Debt | | $59,203.08 |
| 29 | NTHDEGREE<br>Attn President or General Counsel<br>2675 BRECKINRIDGE BLVD STE 200<br>DULUTH, GA 30096<br>FAX: 404.508.2979<br>PHONE: 404.296.5282 | Trade Debt | | $56,000.00 |
| 30 | MEDASSETS INC<br>Attn President or General Counsel<br>100 N POINT CTR E.<br>STE 200<br>ALPHARETTA, GA 30022<br>EMAIL: ir@medassets.com<br>FAX: 678-623-2501<br>PHONE: 678.248.8200 | Trade Debt | | $54,500.05 |

## EXHIBIT D

### Lists of Holders of 5 Largest Secured Claims

Pursuant to Local Bankruptcy Rule 1007-2(a)(5), the following lists the creditors holding, as of approximately March 19, 2014, the five largest secured claims against the Debtors, on a consolidated basis, excluding claims of insiders as defined in 11 U.S.C. § 101.[1]

| NAME, TELEPHONE NUMBER, FAX NUMBER (if available), AND COMPLETE MAILING ADDRESS | AMOUNT OF CLAIM | NATURE OF CLAIM | TYPE OF COLLATERAL | ESTIMATED VALUE OF COLLATERAL |
|---|---|---|---|---|
| Lenders under that certain Credit Agreement, dated as of August 17, 2012<br><br>Royal Bank of Canada, as Administrative Agent<br>4th Floor, 20 King Street West<br>Toronto, Ontario M5H 1C4<br>Attn: Ann Hurley, Senior Manager, Agency Services Group<br>Fax: (416) 842-4023<br>Phone: (416) 842-3996 | $499,600,000 | Bank Debt | Substantially all assets of Debtors | Unknown |
| Dell Financial Services L.P.<br>12234 N. IH-35 Bldg B<br>Austin, TX 78753 | Unknown | Equipment Lease | Equipment | Unknown |
| Qwest Communications Company, LLC<br>1801 California St. Suite 900<br>Denver, CO 80202 | Unknown | Equipment Lease | Equipment | Unknown |
| Wells Fargo Bank, N.A. –Foreign Exchange<br>Global Sales Manager<br>333 Market Street, 28th Floor, Mail Code A0119-280, San Francisco, CA 94105-2102 | Unknown | Swap Transaction | Substantially all assets of Debtors | Unknown |

---

[1]    The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. The Debtors reserve all rights to challenge the status of these claims and are not acknowledging that any claim is, in fact, secured.

## **EXHIBIT E**

**Debtors' Consolidated Balance Sheet (Unaudited)
as of February 28, 2014**

       Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following lists a summary of the Debtors' assets and liabilities.[1]

*\*dollars in thousands*

---

[1]    Unaudited balance sheet includes data for the consolidated company (includes debtor and non-debtor affiliates) as of February 28, 2014 and is subject to change primarily as a result of an update to the year-end tax accrual.

| Assets | |
|---|---|
| Current assets: | |
|    Cash and cash equivalents | 34,338 |
|    Accounts receivable, net | 68,168 |
|    Other current assets | 41,657 |
| Total current assets | 144,164 |
| Other assets: | |
|    Property and equipment, net | 14,223 |
|    Goodwill | 160,639 |
|    Other intangible assets, net | 296,015 |
|    Deferred income taxes | 5,038 |
|    Other assets | 6,733 |
| Total other long term assets | 482,647 |
| Total assets | 626,811 |
| **Liabilities and equity** | |
| Current liabilities: | |
|    Current portion of long term debt | 745,960 |
|    Accounts payable | 6,992 |
|    Accrued expenses | 52,861 |
|    Accrued compensation | 22,049 |
|    Deferred acquisition costs | 11,966 |
|    Current portion of capital leases | 879 |
|    Deferred revenue | 11,829 |
| Total current liabilities | 852,536 |
| Long-term debt | 382 |
| Capital obligations, net of current portion | - |
| Deferred income taxes | 6,261 |
| Deferred acquisition costs | - |
| Other non-current liabilities | 17,100 |
| Total Liabilities | 876,279 |
| Equity: | |
|    Common stock | - |
|    Additional Paid In Capital | 462,268 |
|    Treasury stock | - |
|    Accumulated deficit | (713,208) |
|    Accumulated other comprehensive income | 1,472 |
| Total equity | (249,468) |
| Noncontrolling interests | - |
| Total liabilities and equity | 626,811 |

## EXHIBIT F

**Publicly Held Shares**

Pursuant to Local Bankruptcy Rule 1007-2(a)(7), none of the Debtors' shares of stock, debentures, or other securities are publicly held.

## EXHIBIT G

### List of Property Pledged or Held by Third Party

Pursuant to Local Bankruptcy Rule 1007-2(a)(8), the following lists the Debtors' property that is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, secured creditor, or agent for any such entity.

| OWNER | PROPERTY[1] | NAME, ADDRESS, AND TELEPHONE NUMBER OF HOLDER | COURT (IF APPLICABLE) |
|---|---|---|---|
| Various Debtors | Stock and other equity interests of certain direct and indirect subsidiaries of the Debtors pledged to the Administrative Agent, as described in Exhibit E | Royal Bank of Canada 4th Floor, 20 King Street West Toronto, Ontario M5H 1C4 Attn: Ann Hurley, Senior Manager, Agency Services Group Fax: (416) 842-4023 Phone: (416) 842-3996 | N/A |
| Various Debtors | Cash held in bank accounts subject to deposit account control agreements for the benefit of the Administrative Agent | PNC Bank, National Association 500 First Avenue Pittsburgh, PA 15219 Attn: Thomas Boyce Fax: (412) 762-6519 Phone: (412) 768-6657 | N/A |
| Various Debtors | Cash held in bank accounts subject to deposit account control agreements for the benefit of the Administrative Agent | SunTrust Robinson Humphrey, Inc. Mail Code GA-ATL-1761 3333 Peachtree Road NE, 3rd Floor Atlanta, GA 30326 Fax: (404) 926-5654 Phone: (404) 926-5664 | N/A |

---

[1]   Amounts indicated are reflected in the Debtors' books and records.

## <u>EXHIBIT H</u>

**Premises Owned, Leased, or Held
Under Other Arrangement from Which the Debtors Operate their Business**

Pursuant to Local Bankruptcy Rule 1007-2(a)(9), the following lists the property or premises owned, leased, or held under other arrangement from which the Debtors operate the businesses.

**Leased Property**

| Debtor | Landlord | Location Address | City | State | Zip | Country |
|--------|----------|------------------|------|-------|-----|---------|
| MModal MQ Inc. | Meritex Royal Woods | 5238 Royal Woods Parkway, Suite 190 | Tucker | GA | 30084 | United States |
| MModal Services, Ltd. | Manard Realty, Inc. | 1710 E. 32nd, Fountain Plaza, Suite K | Joplin | MO | 64804 | United States |
| MModal Services, Ltd. | RDU Center III LLC | 2121 RDU Center Drive, Suite 200 | Morrisville | NC | 27560 | United States |
| MModal MQ Inc. | Brandywine Operating Partnership, LP | 1000 Bishops Gate Boulevard | Mt. Laurel | NJ | 08054 | United States |
| MModal Services, Ltd. | RVD Properties, LLC | 1723-1727 Murray Ave | Pittsburgh | PA | 15217 | United States |
| MModal Services, Ltd. | Carothers Office Acquisition LLC | 9009 Carothers Parkway | Franklin | TN | 37067 | United States |
| MModal Services, Ltd. | Boyle 5000 Meridian Joint Venture | 5000 Meridian Blvd, Suite 200 | Franklin | TN | 37067 | United States |
| MModal Services, Ltd. | The K Group | 2129 Electric Road, Suite 100 | Roanoke | VA | 24018 | United States |
| Unknown | Unknown | 235 High Street | Morgantown | WV | 26505 | United States |
| MModal Services, Ltd. | Sunguard | 1650 Great Oaks Way | Alpharetta | GA | 30005 | United States |
| MModal Services, Ltd. | Atlanta Lakeside Real Estate | 5430 Metric Place | Norcross | GA | 30092 | United States |
| MModal Services, Ltd. | InterNap Network Services | 250 William Street | Atlanta | GA | 30303 | United States |
| MModal Services, Ltd. | 210 Washington Pittsburgh LLC | 1710 Murray Avenue/5770 Forbes Avenue | Pittsburgh | PA | 15217 | United States |

19114822

| Debtor | Landlord | Location Address | City | State | Zip | Country |
|---|---|---|---|---|---|---|
| MModal Services, Ltd. | LightTower | 401 North Broad Street | Philadelphia | PA | 19103 | United States |
| Multimodal Technologies, LLC | I/O Data Centers | 615 North 48th St | Phoenix | AZ | 85008 | United States |
| Multimodal Technologies, LLC | Sunguard | 2202 Liberty Avenue | Pittsburgh | PA | 15222 | United States |
| MModal Services, Ltd. | TerreMark | 200 South Biscayne Blvd | Miami | FL | 33131 | United States |

## EXHIBIT I

### Location of Debtors' Substantial Assets, Books and Records

Pursuant to Local Bankruptcy Rule 1007-2(a)(10), the following lists the locations of the Debtors' substantial assets, the location of their books and records, and the nature and location of any assets held by the Debtors outside the territorial limits of the United States.  The value of such assets is not known at this time.

**Location of the Debtors' Substantial Assets**

- The Debtors hold substantial assets in New York, New York by means of their interest in Legend Parent, Inc., which equity interests are held in certificated form in New York, New York.

- The Debtors have substantial assets located at their United States corporate headquarters in Franklin, Tennessee.

- The Debtors have substantial assets in bank accounts at PNC Bank in Raleigh, North Carolina.

- The Debtors have substantial assets in bank accounts at SunTrust Bank in Atlanta, Georgia.

- The Debtors have substantial assets in a bank account at Branch Banking and Trust Company in Roanoke, Virginia.

**Books and Records**

- The Debtors' books and records are located in Franklin, Tennessee.

**Debtors' Assets Outside the United States**

- The Debtors have patents and/or trademarks located outside of the United States in Canada, India, the Philippines, Australia, and Europe.

19114822

## EXHIBIT J

## Litigation

Pursuant to Local Bankruptcy Rule 1007-2(a)(11), to the best of the Debtors' knowledge and belief, the following lists the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their properties where a judgment against the Debtors or a seizure of their property may be imminent.[1]

| MATTER NAME | JURISDICTION | TYPE | STATUS |
|---|---|---|---|
| Krishna Reddy v. MedQuist Inc. et al. | U.S. Court of Appeals for the Ninth Circuit | Appeal from U.S.D.C., N.D. CA | Pending |
| Mary S. Martin | | | Filed |
| Karen N. Hobbs v. MModal | U.S. Equal Employment Opportunity Commission Buffalo Local Office 6 Fountain Plaza Buffalo, NY 14202 | Claim for discrimination based on the Americans with Disabilities Act (ADA) | Pending |
| Cheryl Flanders | N/A | Claim of age discrimination | Threatened |
| Janet Brandly v. MModal Canada Co. | Human Rights Tribunal of Ontario | Claim of Disability Discrimination | Pending |
| Karen Cloonan v. MModal | N/A | Claim of discrimination (unspecified) | Threatened |
| Karen Cloonan v. MModal | U.S. Equal Employment Opportunity Commission Philadelphia District Office 801 Market Street Philadelphia, PA 19107 | Claim of age discrimination; claim of disability discrimination | Unknown |

---

[1]    [The Debtors are parties to certain other litigation, which will be set forth in the Debtors' statement of financial affairs.]

## EXHIBIT K

### Senior Management

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following provides the names of the individuals who comprise the Debtors' existing senior management, a description of their tenure with the Debtors, and a brief summary of their relevant responsibilities and experience.

| NAME / POSITION | RESPONSIBILITIES / EXPERIENCE |
| --- | --- |
| Duncan W. James<br>*Chief Executive Officer* | Duncan James has more than 25 years of experience in the healthcare information and technology industries.  Previously, Mr. James served as President and Chief Executive Officer of QuadraMed Corporation, a leading supplier of clinical, access, and revenue management solutions. Prior to joining QuadraMed, James was Group President at McKesson Corporation for nine years and responsible for multiple business units as well as a member of the McKesson Operating Committee.  In addition to his experience at McKesson, James held multiple executive roles in operations, product management and marketing at HBO & Company and First Data Corporation Health Systems Group, prior to both becoming part of McKesson Corporation. He also was Senior Vice President and General Manager of Healthcare at Scient Corporation, formerly iXL Inc. Additionally, James held a number of key sales and marketing positions at Digital Equipment Corporation, a leader in computer systems and services. He has a Bachelor of Science in industrial management and Master of Business Administration from Georgia Institute of Technology and University of Dallas, respectively. |
| Michael Finke<br>*President* | Mr. Finke has served as President since August 2011.  Mr. Finke co founded MultiModal Technologies, Inc. in 2001 and served as its Chairman and CEO from 2001 until August 2011, when the Company acquired MultiModal Technologies, Inc.  Prior to MultiModal Technologies, Inc., Mr. Finke served as Chief Technology Officer and a Co-Founder of Interactive Systems, Inc. and has held positions at IBM, the University of Karlsruhe and Carnegie Mellon University.  Mr. Finke earned his B.Eng. and M.Eng. degrees in computer science from the University of Karlsruhe. |

| | |
|---|---|
| Ronald L. Scarboro<br>*Chief Operating Officer* | Ron Scarboro has served as Chief Operating Officer since June 2013. Previous to this role, Mr. Scarboro served as Chief Financial Officer since joining the Company in August 2011.  Mr. Scarboro has a broad range of financial and operating experience in payer, acute, post-acute and ambulatory healthcare information technology companies.  He served as the CFO of the Strategic Diversification at Aetna, Inc., a public international diversified health care benefits company in 2011.  From 2008 until 2011, Mr. Scarboro held the titles of CFO-Professional Solutions, Senior Vice President of Finance, and Senior Vice President-Strategic Programs Office of Allscripts Healthcare Solutions, Inc., a provider of clinical software, services, information and connectivity solutions.  From 2007 until the merger of Allscripts and Misys Healthcare Systems, LLC in October 2008, he was Chief Financial Officer of Misys Healthcare Systems, LLC, an ambulatory and post-acute healthcare software and services company.  He was also Vice President of Financial Accounting and Corporate Services for The TriZetto Group, Inc., a public payer focused healthcare software and services company.  Mr. Scarboro earned a bachelor's degree from North Carolina State University and is a Certified Public Accountant. |
| David Woodworth<br>*Chief Financial Officer* | David Woodworth has served as Chief Financial Officer since June 2013 and is responsible for leading all financial planning, treasury and cash management, investor relations, accounting and taxation.  Mr. Woodworth joined the Company in November 2011 as Vice President of Finance.  Prior to joining the Company, Mr. Woodworth served as a Finance executive of Allscripts Healthcare, a publicly traded provider of clinical software, services, information and connectivity solutions, where he helped Allscripts achieve a period of organic and inorganic growth (including the merger and integration with Eclipsys in 2010) and drove improved financial operational execution and cost discipline through partnerships with the operational leaders.  Mr. Woodworth also spent approximately six years with Ernst & Young's Assurance Services partnering with key customers in a variety of industries.  His experience also includes debt and equity offerings, corporate restructurings and reorganizations, and business combinations and dispositions.  Mr. Woodworth holds a BS in Information Systems and a Masters in Accountancy from Wake Forest University and is a Certified Public Accountant. |

## EXHIBIT L

### Weekly Payroll

Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-(2)(A) and (C), the following provides the estimated amount of weekly payroll[1] to the Debtors' employees (not including officers, directors, and stockholders) and the estimated amount to be paid to the Debtors' officers, stockholders, directors, and financial and business consultants retained by the Debtors, for the 30-day period following the filing of the chapter 11 petitions.

| | |
|---|---|
| **PAYMENTS TO EMPLOYEES (NOT INCLUDING OFFICERS, DIRECTORS, AND STOCKHOLDERS)** | $10,329,000 |
| **PAYMENTS TO OFFICERS, STOCKHOLDERS, AND DIRECTORS** | $471,000 |
| **PAYMENTS TO FINANCIAL AND BUSINESS CONSULTANTS[2]** | |

---

[1]    The following estimates are inclusive of expenses (and commission payments to ordinary employees), but net of taxes and benefit deductions.  The Debtors reserve the right to amend or update this schedule.

[2]    Although the Debtors do not expect to pay any amount to financial and/or business consultants within the first 30 days of these cases, the Debtors expect that such financial and/or business consults will accrue certain amounts for services rendered during such time.  The Debtors anticipate that they may file certain retention applications for such professionals and seek to have amounts paid in connection with such services rendered within the first 30 days of these cases pursuant to an order governing the compensation of such professionals.

## EXHIBIT M

**Estimated Cash Receipts and Disbursements**
**During the 30-Day Period Following the Petition Date**

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides, for the 30-day period following the filing of the chapter 11 petitions, the estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

| | |
|---|---|
| **CASH RECEIPTS** | $28,000,000 |
| **CASH DISBURSEMENTS** | $22,000,000 |
| **NET CASH GAIN** | $6,000,000 |
| **UNPAID OBLIGATIONS** | Unknown |
| **UNPAID RECEIVABLES** | Unknown |