**Hearing Date and Time:  April 30, 2014, at 9:45 a.m. (Eastern Time)**
**Objection Deadline:  April 7, 2014, at 4:00 p.m. (Eastern Time)**

DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
Allan S. Brilliant
Shmuel Vasser
Jeffrey T. Mispagel

*Proposed Attorneys for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X
                                                         :
In re:                                                   :    Chapter 11
                                                         :
LEGEND PARENT, INC., *et al.*,                           :    Case No. 14-10701 (REG)
                                                         :
        Debtors.                                         :    Jointly Administered
                                                         :
-------------------------------------------------------- X

**NOTICE OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF ALVAREZ &**
**MARSAL NORTH AMERICA, LLC AS RESTRUCTURING ADVISOR FOR**
**THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application  for Entry*

*of an Order Authorizing the Retention and Employment of Alvarez & Marsal North America,*

*LLC as Restructuring Advisor for the Debtors* Nunc Pro Tunc *to the Petition Date* (the

"**Application**") will be held before the Honorable Robert E. Gerber, United States Bankruptcy

Judge, United States Bankruptcy Court for the Southern District of New York (the "**Court**"),

One Bowling Green, Courtroom No. 523, New York, New York 10004, on **April 30, 2014, at**

**9:45 a.m., prevailing Eastern Time**.

19141215

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall conform to the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), all General Orders and Local Bankruptcy Rules of the Court, and the *Case Management Order* [Docket No. 26] issued by the Court; shall be set forth in writing describing the basis therefore; shall be filed electronically with the Court on the docket of *In re Legend Parent, Inc.*, Case No. 14-10701 (REG), pursuant to the Court's General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Court's case filing system and by all parties in interest on a 3.5 inch disk or flash drive, preferably in portable document format ("**PDF**"), Microsoft Word, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served in accordance with General Order M-399 or otherwise so as to be actually received no later than **4:00 p.m. (prevailing Eastern Time) on April 7, 2014** by (i) the Chambers of the Honorable Robert E. Gerber, One Bowling Green, New York, New York, 10004; (ii) Dechert LLP, Proposed Attorneys for the Debtors, 1095 Avenue of the Americas, New York, New York, Attn: Allan S. Brilliant, Shmuel Vasser and Jeffrey T. Mispagel; (iii) William K. Harrington, United States Trustee, U.S. Department of Justice, Office of the U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Rm 1006, New York, NY 10014, Attn: Andrea Schwartz and Richard Morrissey; (iv) counsel to any official committee appointed in these chapter 11 cases; (v) Latham & Watkins LLP, counsel to the Administrative Agent under the Credit Facility, 233 South Wacker Drive, Suite 5800, Chicago, IL  60606, Attn: Richard A. Levy; and (vi) all other parties who have filed a notice of appearance and request for service of documents.

**PLEASE TAKE FURTHER NOTICE** that only those responses that are timely filed, served, and received will be considered at the hearing.  Failure to file a timely objection may result in entry of an order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that replies, if any, in further support of the Application must be filed and served no later than **4:00 p.m. (prevailing Eastern Time) on April 22, 2014**.

Dated: New York, New York
   March 25, 2014       DECHERT LLP

                */s/  Shmuel Vasser*
                Allan S. Brilliant
                Shmuel Vasser
                Jeffrey T. Mispagel
                1095 Avenue of the Americas
                New York, New York  10036
                Telephone:  (212) 698-3500
                Facsimile:  (212) 698-3599
                Email:  allan.brilliant@dechert.com
                   shmuel.vasser@dechert.com
                   jeffrey.mispagel@dechert.com

                *Proposed Attorneys for the Debtors and Debtors in Possession*

**Hearing Date and Time:  April 30, 2014, at 9:45 a.m. (Eastern Time)**
**Objection Deadline:  April 7, 2014, at 4:00 p.m. (Eastern Time)**

DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
Allan S. Brilliant
Shmuel Vasser
Jeffrey T. Mispagel

*Proposed Attorneys for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X
                                                         :
In re:                                                   :    Chapter 11
                                                         :
LEGEND PARENT, INC., *et al.*,                           :    Case No. 14-10701 (REG)
                                                         :
        Debtors.                                         :    Jointly Administered
                                                         :
-------------------------------------------------------- X

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE**
**RETENTION AND EMPLOYMENT OF ALVAREZ & MARSAL NORTH AMERICA,**
**LLC AS RESTRUCTURING ADVISOR FOR THE DEBTORS**
***NUNC PRO TUNC* TO THE PETITION DATE**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

JURISDICTION ................................................................................................................. 1

BASIS TO RETAIN A&M AS RESTRUCTURING ADVISOR ................................................. 2

    A.    A&M's Qualifications ........................................................................................ 2

    B.    Scope Of Services ............................................................................................ 3

A&M'S DISINTERESTEDNESS ........................................................................................... 5

COMPENSATION AND FEES ............................................................................................. 7

INDEMNIFICATION .......................................................................................................... 9

RELIEF REQUESTED ...................................................................................................... 11

BASIS FOR RELIEF REQUESTED .................................................................................... 11

NOTICE ......................................................................................................................... 14

NO PRIOR REQUEST ..................................................................................................... 14

CONCLUSION ................................................................................................................ 15

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby file this application (the "**Application**") for entry of an order authorizing the employment and retention of Alvarez & Marsal North America, LLC ("**A&M**") to serve as restructuring advisor to the Debtors, *nunc pro tunc* to the Petition Date (as defined below). In support of the Application, the Debtors rely upon and incorporate by reference the Declaration of David J. Coles (the "**Coles Declaration**"), a Managing Director with A&M, a copy of which is attached hereto as Exhibit A. In further support of the Application, the Debtors respectfully represent as follows:

## INTRODUCTION

1.      On March 20, 2014 (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No chapter 11 trustee or examiner has been appointed in any of the Debtors cases. These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these chapter 11 cases is contained in the *Declaration of David Woodworth in Accordance With Local Rule 1007-2 in Support of First Day Motions* [Docket No. 3] (the "**First Day Declaration**"),[1] which is incorporated herein by reference.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION

3.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334 and the Amended Standing Order of Reference of the United States District Court for

the Southern District of New York, dated January 31, 2012 (Preska, C.J.).  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this District pursuant to 28

U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are sections 327(a), 330,

331, and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Rules 2014-1

and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the

Southern District of New York (the "**Local Rules**").

## BASIS TO RETAIN A&M AS RESTRUCTURING ADVISOR

### A.       A&M's Qualifications

4.       In consideration of the size and complexity of their businesses, as well as

the exigencies of the circumstances, the Debtors have determined that the services of an

experienced restructuring advisor will substantially enhance their attempts to maximize the value

of their estates.  A&M is well qualified to provide these services in light of their extensive

knowledge and expertise with respect to chapter 11 proceedings.

5.       A&M specializes in interim management, crisis management, turnaround

consulting, operational due diligence, creditor advisory services, and financial and operational

restructuring.  A&M's debtor advisory services have included a wide range of activities targeted

at stabilizing and improving a company's financial position, including developing or validating

forecasts, business plans and related assessments of a business' strategic position; monitoring

and managing cash, cash flow and supplier relationships; assessing and recommending cost

reduction strategies; and designing and negotiating financial restructuring packages.  A&M has

been involved in numerous large chapter 11 restructurings including: In re Velo Holdings Inc.,

2

Case No. 12-11384 (MG) (Bankr. S.D.N.Y. May 29, 2012); <u>In re Vertis Holdings Inc.</u>, Case No.

12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); <u>Appleseed's Intermediate Holdings LLC d/b/a/</u>

<u>Orchard Brands</u>, Case No. 11-10160 (KG) (Bankr. D. Del. Feb. 18, 2011); <u>In re EBHI Holdings,</u>

<u>Inc. (f/k/a Eddie Bauer Holdings, Inc.)</u>, Case No. 09-12099 (MFW) (Bankr. D. Del. July 7,

2009); <u>In re NextMedia Group Inc.</u>, Case No. 09-14463 (PJW) (Bankr. D. Del. Jan. 22, 2010); <u>In</u>

<u>re Lehman Brothers Holdings Inc.</u>, Case No. 08-13555 (SCC) (Bankr. S.D.N.Y. Dec. 17, 2008);

and <u>In re Washington Mutual Inc.</u>, Case No. 08-12229 (MFW) (Bankr. D. Del. Nov. 7, 2008),

amongst others.

6.       In addition, A&M is familiar with the Debtors' businesses, financial

affairs, and capital structure.  Since the firm's initial engagement on September 25, 2013,[2] the

A&M personnel providing services to the Debtors (the "**A&M Professionals**") have worked

closely with the Debtors' management and other professionals in assisting with the myriad

requirements of these chapter 11 cases.  Consequently, the Debtors believe that A&M has

developed significant relevant experience and expertise regarding the Debtors and the unique

circumstances of this case.  For these reasons, A&M is both well qualified and uniquely suited to

deal effectively and efficiently with matters that may arise in the context of these cases.

Accordingly, the Debtors submit that the retention of A&M on the terms and conditions set forth

herein is necessary and appropriate, is in the best interest of the Debtors' estates, creditors, and

all other parties in interest, and should be granted in all respects.

---

[2]      A&M was originally retained pursuant to a two phase engagement.  The original engagement letter, dated
September 25, 2013, covered the phase one work ("**Phase One**").  Phase One consisted of assisting and
advising the Debtors with the analysis of the Company's business plan, related forecasts and strategy, cash
flows, liquidity, working capital needs and a preliminary assessment and evaluation of restructuring options.
Once Phase One was completed, A&M and the Debtors executed the attached Engagement Letter (as defined
below) to cover the phase two work.  The Engagement Letter terminated the original engagement letter in
accordance with its terms.

B.      **Scope Of Services**

7.      The terms and conditions of the letter agreement dated October 31, 2013 (including the indemnification agreement attached thereto, the "**Engagement Letter**"),[3] a copy of which is attached hereto as Exhibit B, were negotiated between the Debtors and A&M and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  The terms of the Engagement Letter shall govern the Debtors' retention of A&M except as explicitly set forth in any order granting this Application.

8.      From time to time, pursuant to the Engagement Letter, A&M may utilize the services of personnel of its affiliates in connection with the provision of services hereunder. All such affiliates are wholly owned by A&M's parent company and certain respective employees.

9.      Among other things, A&M will provide assistance to the Debtors with respect to management of the overall restructuring process, the development of ongoing business and financial plans and supporting restructuring negotiations among the debtors, their advisors and their creditors with respect to an overall exit strategy for their chapter 11 cases.

10.     Scope of Services for A&M: A&M will provide such restructuring advisory services as A&M and the Debtors shall deem appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases, including, but not limited to:

> (a)      assistance in refining the Debtors' current business plan and in the preparation of a revised operating plan, balance sheet and cash flow forecast (including covenants) and presentation of such plan and forecast to the Debtors' Board of Directors (the "**Board**") and their creditors;

---

[3]     The summaries of the Engagement Letter contained in this Application are provided for the purposes of convenience only.  In the event of any inconsistency between the summaries contained herein and the related terms and provisions of the Engagement Letter, such terms of the Engagement Letter shall control.  Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

4

(b)      assistance in the identification, quantification, execution and monitoring of cost reduction and operational improvement opportunities;

(c)      assistance in the development and management of a thirteen (13) week receipts and disbursements based cash flow forecast;

(d)      assistance in communication with creditors;

(e)      coordination with any investment banker retained by the Debtors;

(f)      assistance in the development of presentations and communications to rating agencies, secured lenders and noteholders;

(g)      assist with the case administration and reporting associated with a chapter 11 filing, including but not limited to, preparation of schedules and statements, monthly operating reports, claim reconciliation and assumption and rejection analysis; and

(h)      other activities as are approved by the Debtors, the Debtors' Chief Executive Officer and/or his designees, or the Board and agreed to by A&M.

11.      It is essential that the Debtors continue to employ a restructuring advisor to render the foregoing professional services in order to assist the Debtors with their duties as debtors and debtors in possession and to handle many issues that may arise in the context of these cases.  The Debtors believe (a) A&M is eminently qualified to serve them in these chapter 11 cases, (b) the services that A&M will provide to the Debtors are necessary to enable the Debtors to maximize the value of the estates, and (c) that the retention of A&M is in the best interests of the Debtors' estates and creditors.

## A&M'S DISINTERESTEDNESS

12.      To check and clear potential conflicts of interest in these cases, A&M researched its relationship with the following entities (collectively, the "**Interested Parties**"):

(a)      the Debtors;

(b)      the Debtors' non-Debtor affiliates;

(c)      the Debtors' litigation adversaries;

5

(d)     the Debtors' directors and officers;

(e)     equity holders of MModal Holdings, Inc. (the parent Debtor);

(f)     the Debtors' top five (5) secured creditors;

(g)     the Debtors' top thirty (30) unsecured creditors;

(h)     the Debtors' secured lenders;

(i)     the agents for the Debtors' secured lenders;

(j)     additional secured parties of the Debtors;

(k)     the Debtors' depository institutions;

(l)     the Debtors' key vendors;

(m)     the Debtors' material contract counterparties;

(n)     other professionals employed  by the Debtors;

(o)     the Debtors' utility providers;

(p)     the Debtors' insurance carriers and brokers; and

(q)     the Debtors' taxing authorities.[4]

The identities of the Interested Parties were provided to A&M by the Debtors.

13.     To the best of the Debtors' knowledge, information, and belief, other than in connection with its role as advisor to the Debtors in these cases and as set forth in the Coles Declaration, A&M has no connection with the Debtors, their creditors, the Office of the U.S. Trustee for the Southern District of New York (the "**U.S. Trustee**"), or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, except as set forth in the Coles Declaration.

---

[4]     A&M has searched those taxing authorities which the Debtors contemplate will be subject to the Debtors' Motion for Entry of Interim and Finals Orders Authorizing the Payment of Certain Prepetition Taxes and the results of that search are provided herein.  A&M is in the process of searching certain additional taxing authorities and will supplement their disclosures, as applicable, upon completion of such search.

6

14.    A&M is not a creditor of the Debtors.  To the best of the Debtors'

knowledge, information, and belief, A&M neither holds nor represents any interest adverse to the

Debtors or to their respective estates in the matters for which A&M is proposed to be retained.

Accordingly, the Debtors believe that A&M is a "disinterested person," as defined in Bankruptcy

Code section 101(14) and as required by Bankruptcy Code section 327(a).  The Debtors'

knowledge, information, and belief regarding the matters set forth in this and the preceding

paragraph are based and made in reliance on the Coles Declaration.  As set forth in the Coles

Declaration, if any new material facts or relationships are discovered or arise, A&M will use

reasonable efforts to provide the Court promptly with a supplemental declaration, as required by

Bankruptcy Rule 2014(a).

## COMPENSATION AND FEES

15.    Subject to Court approval, and in compliance with the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any fee and expense

guidelines of this Court, and such other procedures as may be fixed by order of the Court, the

Debtors will compensate A&M in accordance with the terms and conditions of the Engagement

Letter (the "**Fee Structure**").

16.    The Fee Structure provides, in relevant part, that A&M will be paid by the

Debtors for the services of the A&M Professionals at their customary hourly billing rates which

shall be subject to the following ranges:

| | |
|---|---|
| Managing Directors | $650-925 |
| Directors | $500-725 |
| Analysts/Associates | $325-525 |

Such rates and ranges shall be subject to adjustment annually at such at time A&M adjusts its

rates generally.

7

17.    In addition, A&M will seek reimbursement for the reasonable and

necessary out-of-pocket expenses of the A&M Professionals incurred in connection with this

assignment, such as travel, lodging, third party duplications, messenger and telephone charges.

Moreover, A&M shall be reimbursed for the reasonable fees and expenses of its counsel incurred

in connection with the preparation and approval of this Application.  All fees and expenses due

to A&M will be billed in accordance with any interim compensation orders entered by this

Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, any

fee and expense guidelines of this Court, and such other procedures as may be fixed by order the

Court.

18.    A&M received $100,000 on account of the Phase One work.

Additionally, A&M received $275,000 as an initial retainer in connection with preparing for and

conducting the filing of these chapter 11 cases, as described in the Engagement Letter.  In the

ninety (90) days prior to the Petition Date, A&M received retainers and payments totaling

$1,716,924.03 in the aggregate for services rendered and expenses incurred for the Debtors.

A&M has applied these funds to amounts due for services rendered and expenses incurred prior

to the Petition Date.  A precise disclosure of the amounts or credits held, if any, as of the Petition

Date will be provided in A&M's first interim fee application for postpetition services and

expenses to be rendered or incurred for or on behalf of the Debtors.  The unapplied residual

retainer, which is estimated to total approximately $400,000, will not be segregated by A&M in a

separate account, and will be held until the end of these chapter 11 cases and applied to A&M's

finally approved fees in these proceedings.  At the end of these chapter 11 cases, any remaining

balance will be promptly returned to the Debtors upon the satisfaction of all obligations under

the Engagement Letter.

8

19.     At this time, it is not possible to estimate the number of professional hours that will be required to perform the services contemplated by the Engagement Letter. Accordingly, it is not possible to estimate the total compensation to be paid to A&M under the Engagement Letter.

20.     As set forth above, A&M will apply to the Court for the allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any fee and expense guidelines of this Court, and such other procedures as may be fixed by order of the Court.

21.     The fees and expense reimbursement provisions described above are consistent with normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined.  A&M and the Debtors also believe that the foregoing compensation arrangements are both reasonable and market-based based upon A&M's restructuring expertise, its capital markets knowledge, financial skills and mergers and acquisitions capabilities.

22.     A&M will endeavor to coordinate with other retained professionals in this bankruptcy case to eliminate unnecessary duplication or overlap of work.

23.     Given the numerous issues that A&M may be required to address in the performance of services pursuant to the Engagement Letter, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth herein are fair and reasonable.

## INDEMNIFICATION

24.    As part of the overall compensation payable to A&M under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification obligations as described in paragraph 10 of the Engagement Letter and the related attachment thereto (the "**Indemnification Agreement**").  In summary, the Indemnification Agreement provides that the Debtors will indemnify and hold harmless and defend A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "**Indemnified Party**" and collectively, the "**Indemnified Parties**")[5] in investigating, preparing or defending any action or claim, whether or not in connection with litigation, in which any Indemnified Party is a party, or enforcing the Engagement Letter, as and when incurred, caused by, relating to, based upon or arising out of the Indemnified Parties' acceptance or the performance or nonperformance of their obligations under the Engagement Letter, described in the Indemnification Agreement, except for liabilities caused by the Indemnified Party's gross negligence, bad faith or willful misconduct.  These are standard provisions, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on the indemnification provisions that are customary in this District.

25.    The Debtors and A&M believe that the indemnification provisions are customary and reasonable for restructuring and financial advisory engagements, both out-of-court and in chapter 11 proceedings.

---

[5]    The indemnification provision in the Engagement Letter provides that the Debtors will indemnify and hold harmless A&M and the other Indemnified Parties against any and all loses, claims, damages, liabilities, penalties, obligations, and reasonable and documented out-of-pocket expenses (collectively, "Losses") as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) A&M's engagement; *provided, however*, such indemnity shall not apply to any such Loss to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence, bad faith, or willful misconduct.

26.    The terms of the Engagement Letter, including the Indemnification Agreement, were fully negotiated between the Debtors and A&M at arm's length and the Debtors respectfully submit that the Indemnification Agreement is reasonable and in the best interests of the Debtors, their estates and creditors.  Accordingly, as part of this Application, the Debtors request that this Court approve the Indemnification Agreement.

## RELIEF REQUESTED

27.    By this Application, the Debtors request that the Court enter an order pursuant to Bankruptcy Code sections 327(a) and 330 authorizing the Debtors to employ and retain A&M as their restructuring advisors, for the purpose of advising the Debtors during all phases of these chapter 11 cases, pursuant to the terms of the Engagement Letter *nunc pro tunc* to the Petition Date.

## BASIS FOR RELIEF REQUESTED

28.    The Debtors submit that the retention of A&M under the terms described herein is appropriate under sections 327(a) and 1107(b) of the Bankruptcy Code.

29.    Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court' s approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).  Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

(a)    is not a creditor, an equity security holder, or an insider;

(b)    is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(c)    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or

11

> interest in, the debtor, or for any other reason.  11 U.S.C. §
> 101(14).

11 U.S.C. § 101(14).

30.     As discussed above, A&M satisfies the disinterestedness standard of

section 327(a) of the Bankruptcy Code. A&M researched its relationships with the Interested

Parties, and any relationships identified are discussed in the Coles Declaration.

31.     To the best of the Debtors' knowledge and except to the extent disclosed

herein and in the Coles Declaration: (a) A&M is a "disinterested person" within the meaning of

section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code,

and does not hold or represent an interest adverse to the Debtors' estates; and (b) has no

connection to the Debtors, their creditors, or other parties in interest in these cases.  To the extent

that A&M discovers any new relevant facts or relationships bearing on the matters described

herein during the period of A&M's retention, A&M will file promptly a supplemental

declaration as required by Bankruptcy Rule 2014(a).

32.     Further, section 1107(b) of the Bankruptcy Code provides that "a person is

not disqualified for employment under section 327 of this title by a debtor in possession solely

because of such person's employment by or representation of the debtor before the

commencement of the case."  11 U.S.C. § 1107(b).  A&M's prepetition relationship with the

Debtors is therefore not an impediment to A&M's retention as Debtors' postpetition

restructuring advisor.

33.     The Debtors submit that the terms and conditions of A&M's retention as

described herein, including the proposed compensation and indemnification terms, are

reasonable and in keeping with the terms and conditions typical for engagements of this size and

character.  Since the Debtors will require substantial assistance with the reorganization process,

it is reasonable for Debtors to seek to employ and retain A&M to serve as its restructuring advisor on the terms and conditions set forth herein.

34.    The Debtors respectfully submit that the terms of the proposed retention are reasonable and based on the customary compensation charged by A&M and comparably skilled practitioners in matters outside and other than chapter 11 cases, as well as cases under chapter 11, and have been approved and implemented in not just this jurisdiction but also in chapter 11 cases elsewhere.  See, e.g., In re Velo Holdings Inc., Case No. 12-11384 (MG) (Bankr. S.D.N.Y. May 29, 2012) (hourly and transaction fees); In re Dunmore Homes, Inc., Case No. 07-13533 (MG) (Bankr. S.D.N.Y. Nov. 27, 2007) (monthly, hourly and transaction fees); In re Scotia Development, LLC, Case No. 07-20027 (RSS) (Bankr. S.D. Tex. Feb. 27, 2007) (monthly and transaction fee); In re Adventure Parks Group, LLC, et al., Case No. 06-70659 (JTL) (Bankr. M.D. Ga. Sept. 13, 2006) (hourly and success fees).  Indeed, the entire engagement as set forth in the Engagement Letter is common within the industry and reflects what is considered to be "market" both in and out of chapter 11 proceedings, in each case, in light of A&M's experience in reorganizations and the scope of work to be performed pursuant to its retention.  Accordingly, the Debtors respectfully submit that the terms of the proposed engagement of A&M should be approved.


*[Remainder of page intentionally left blank]*


13

## NOTICE

35.     Notice of this Application has been provided to: (i) the United States Trustee for Region 2, serving the Southern District of New York, (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) the Administrative Agent under the Credit Facility; (iv) counsel to the Administrative Agent under the Credit Facility; (v) the Trustee under the Indenture; (vi) counsel to the holders of the majority of the Notes under the Indenture; (vii) the Internal Revenue Service; (viii) the New York State Department of Taxation and Finance; (ix) the New York State Department of Health; (x) the Securities and Exchange Commission; (xi) the United States Attorney's Office; and (xii) all parties who have filed a notice of appearance in these cases.  In light of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances.  The Debtors have provided notice to all entities believed to have claimed or may claim an interest in the subject matter of the proposed order or which otherwise would be affected by the proposed order.

## NO PRIOR REQUEST

36.     No prior requests for the relief sought in this Application have been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully submit that the Court enter an order, substantially in the form attached hereto as Exhibit C, granting the Debtors the relief requested herein and such other further relief to the Debtors as may be just and proper under the circumstances.

Dated: New York, New York
       March 25, 2014

> LEGEND PARENT, INC.,
> on behalf of itself and its affiliated
> Debtors and Debtors in Possession
>
>
> Name: David Woodworth
> Title: Chief Financial Officer

15

## EXHIBIT A

**The Coles Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
                                                         :
In re:                                                   :   Chapter 11
                                                         :
LEGEND PARENT, INC., *et al.*,                           :   Case No. 14-10701 (REG)
                                                         :
        Debtors.                                         :   Jointly Administered
                                                         :
-------------------------------------------------------- X

### DECLARATION OF DAVID J. COLES IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF ALVAREZ & MARSAL NORTH AMERICA, LLC AS RESTRUCTURING ADVISOR FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

I, David J. Coles, being duly sworn, state the following under penalty of perjury:

1.      I am a Managing Director with Alvarez & Marsal North America, LLC (together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly-owned subsidiaries, and independent contractors, "**A&M**"), a restructuring advisory services firm with numerous offices throughout the country.  I am duly authorized to make this declaration on behalf of A&M (the "**Declaration**").  I submit this Declaration in accordance with section 327 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2014(a), 2016(b) and 5002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") in connection with the application (the "**Application**") of the above captioned debtors and debtors in possession collectively (the "**Debtors**") for an order pursuant to section 327(a) of the Bankruptcy Code authorizing the Debtors to retain and employ A&M as restructuring advisor to the Debtors.

2.       Except as otherwise noted in this Declaration,[1] I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.  Capitalized terms and phrases not otherwise defined herein shall have the meanings ascribed to such terms in the Application,

3.       A&M together with its affiliates (the "**Firm**") utilize certain procedures (the "**Firm Procedures**") to determine the Firm's relationships, if any, to parties that may have a connection to a client debtor.  In implementing the Firm Procedures, the following actions were taken to identify parties that may have connections to the Debtors, and the Firm's relationship with such parties:

(a)       A&M requested and obtained from the Debtors extensive lists of interested parties and significant creditors (the "**Potential Parties in Interest**").[2] The Potential Parties in Interest, which A&M reviewed, is annexed hereto as <u>Schedule A.</u>  The Potential Parties in Interest reviewed include, among others, the Debtors, the Debtors' non-Debtor affiliates, the Debtors' litigation adversaries; the Debtors' directors and officers, equity holders of MModal Holdings, Inc., the Debtors' top five (5) secured creditors, the Debtors' top thirty (30) unsecured creditors; the Debtors' secured lenders, the agents for the Debtors' secured lenders, additional secured parties of the Debtors, the Debtors' depository institutions, the Debtors' key vendors, the Debtors' material contract counterparties, other professionals employed by the Debtors, the Debtors' utility providers, the Debtors' insurance carriers and brokers, and the Debtors' taxing authorities.

(b)       A&M then compared the names of each of the Potential Parties in Interest to the names in its master electronic database of the Firm's

---

[1]     Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at A&M and are based upon information provided by them.

[2]     The Potential Parties in Interest list is expected to be updated during these cases.  A&M continues to review the relationships its attorneys may have with potentially interested parties and to determine whether any relationships other than those set forth herein exist.  As may be necessary, A&M will supplement this Declaration if it becomes aware of a relationship that may adversely affect A&M's retention in these cases or discovers additional parties in interest through the filing of statements of financial affairs or statements under Bankruptcy Rule 2019.  A&M will update this disclosure if it is advised of any trading of claims against or interests in the Debtors that may related to A&M's retention or otherwise requires such disclosure.

current and recent clients (the "**Client Database**").  The Client Database generally includes the name of each client of the Firm, the name of each party who is or was known to be adverse to the client of the Firm in connection with the matter in which the Firm is representing such client, the name of each party that has, or had, a substantial role with regard to the subject matter of the Firm's retention, and the names of the Firm professionals who are, or were, primarily responsible for matters for such clients.

(c)     An email was issued to all Firm professionals requesting disclosure of information regarding: (i) any known personal connections between the respondent and/or the Firm on the one hand, and either the Potential Parties in Interest or the Debtors, on the other hand,[3] (ii) any known connections or representation by the respondent and/or the Firm of any of the Potential Parties in Interest in matters relating to the Debtors; and (iii) any other conflict or reason why A&M may be unable to represent the Debtors.

(d)     Known connections between the former or recent clients of the Firm and the Potential Parties in Interest were compiled for purposes of preparing this Declaration.  These connections are listed in Schedule B annexed hereto.

4.     As a result of the Firm Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, A&M:

(a)     is not a creditor of the Debtors (including by reason of unpaid fees for prepetition  services), equity security holders of the Debtors , or an "insider" of the Debtors as that terms is defined in Section 101(31) of the Bankruptcy Code;

(b)     were not, within two (2) years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtor; and

(c)     does not have an interest materially adverse to the interests of the Debtors' estates, or of any class of creditors or equity security

---

[3]     In reviewing its records and the relationships of its professionals, A&M did not seek information as to whether any A&M professional or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain A&M professionals have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors or any other party in interest; or (b) has engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, I do not believe it would impact A&M's disinterestedness or otherwise give rise to a finding that A&M holds or represents an interest adverse to the Debtors' estates.

holders, by reason of any direct or indirect relationship to,
connection with, or interest in, the Debtors, or for any other reason.

5.     A&M is not a prepetition creditor of the Debtors.

6.     As can be expected with respect to any international professional services

firm such as A&M, the Firm provides services to many clients with interests in the Debtors'

chapter 11 cases. To the best of my knowledge, except as indicated below, the Firm's services

for such clients do not relate to the Debtors' chapter 11 cases.  To the best of my knowledge,

none of the Firm's clients disclosed in this Declaration accounted for more than 1% of the Firm's

collections in the twelve-month period ending February 28, 2014.

7.     In the course of its review, A&M learned that the Firm maintains a

relationship with certain Potential Parties in Interest that may relate to the Debtors' cases, which

relationships are listed in <u>Schedule B</u> attached hereto.

8.     Further, as part of its diverse practice, the Firm appears in numerous cases

and proceedings, and participates in transactions that involve many different professionals,

including attorneys, accountants, and financial consultants, who represent claimants and parties-

in-interest in the Debtors' chapter 11 cases.  Further, the Firm has performed in the past, and may

perform in the future, advisory consulting services for various attorneys and law firms, and has

been represented by several attorneys and law firms, some of whom may be involved in these

proceedings.  Based on our current knowledge of the professionals involved, and to the best of

my knowledge, none of these relationships create interests materially adverse to the Debtors in

matters upon which A&M is to be employed, and none are in connection with these cases.

9.     I am not related or connected to and, to the best of my knowledge, no

other professional of A&M who will work in this engagement is related to or connected to, any

United States Bankruptcy Judge for the Southern District of New York, any of the District

4

Judges for the Southern District of New York who handle bankruptcy cases, the U.S. Trustee for

Region 2, serving the Southern District of New York, or any employee in the Office of the U.S.

Trustee for Region 2, serving the Southern District of New York.

10.     Accordingly, to the best of my knowledge, A&M is a "disinterested

person" as that term is defined in section 101(14) of the Bankruptcy Code, in that A&M (i) is not

a creditor, equity security holder, or insider of the Debtors; (ii) was not, within two (2) years

before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of

the Debtors; and (iii) does not have an interest materially adverse to the interest of the Debtors'

estates or of any class of creditors or equity security holders.

11.     If any new material relevant facts or relationships are discovered or arise,

A&M will promptly file a supplemental declaration with this Court.

## COMPENSATION AND FEE APPLICATION

12.     Subject to Court approval and in accordance with the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any fee and expense

guidelines of this Court, and such other procedures as may be fixed by order the Court, A&M

will seek from the Debtors payment for compensation on an hourly basis and reimbursement of

actual and necessary expenses incurred by A&M.  A&M's customary hourly rates as charged in

bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this

engagement are outlined in the Application.  These hourly rates are adjusted annually.

13.     The fees and expense reimbursement provisions described above are

consistent with normal and customary billing practices for cases of this size and complexity that

require the level and scope of services outlined.  A&M also believes that the foregoing

compensation arrangements are both reasonable and market-based.

14.     According to A&M's books and records, during the ninety (90) day period

prior to the Petition Date, A&M received approximately $1,716,924.03 from the Debtors for

professional services performed and expenses incurred.

15.     Set forth below is a chart listing payments received by A&M from the

Debtors within ninety (90) days prior to the Petition Date:

| Date Paid | Fees & Expenses | Retainer | Total |
|---|---|---|---|
| 01/10/14 | 135,000.00 | | 135,000.00 |
| 02/26/14 | 600.00 | | 600.00 |
| 01/27/14 | 200,216.71 | | 200,216.71 |
| 02/12/14 | 276,063.78 | | 276,063.78 |
| 03/05/14 | 541,349.02 | | 541,349.02 |
| 03/18/14 | | 125,000.00 | 125,000.00 |
| 03/19/14 | 438,694.52 | | 438,694.52 |
| **Total** | | | **1,716,924.03** |

16.     A&M will apply in accordance with the terms of its retention order to the

Court for payment of compensation and reimbursement of expenses in accordance with

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any fee

and expense guidelines of this Court, and such other procedures as may be fixed by order the

Court, and pursuant to any additional procedures that may be or have already been established by

the Court in these cases.

17.     To the best of my knowledge, (i) no commitments have been made or received by A&M with respect to compensation or payment in connection with these cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (ii) A&M has no agreement with any other entity to share with such entity any compensation received by A&M in connection with these chapter 11 cases.

18.     By reason of the foregoing, I believe A&M is eligible for employment and retention by the Debtors pursuant to sections 327(a) (as modified by section 1107(b)), 328, 330 and 331 of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: New York, New York
        March 25, 2014

By: /s/
David J. Coles
Managing Director

7

**<u>Schedule A</u>**

**Potential Parties in Interest**

**<u>Filing Entities</u>**

AllType Medical Transcription Services, Inc.

Legend Parent, Inc.

MedQuist of Delaware, Inc.

Mirrus Systems Inc.

MModal CB Inc.

MModal CM LLC

MModal Holdings Inc.

MModal Inc.

MModal IP LLC

MModal MQ Inc.

MModal Services, Ltd.

MModal Systems & Services Inc.

Multimodal Technologies, LLC

Poiesis Informatics, Inc.

**<u>Banking relationships</u>**

AXIS Bank Limited

Bank of Philippine Islands

BNP Parisbas Fortis

CIBC

Citibank N A

HDFC Bank Limited

HSBC

ICICI Bank

IndsInd Bank Limited

JP Morgan Chase

PNC

RBC

State Bank of India

SunTrust

Union Bank of India

**<u>Major Competitors</u>**

3M

EHR Vendors

Nuance

OptumHealth

**Debt**

Royal Bank of Canada, as Administrative Agent

Royal Bank Of Canada, As L/C Issuer

Royal Bank Of Canada, As Swing Line Lender

U.S. Bank National Association, as Trustee

Wells Fargo

**Equity Shareholders**

Aisling Capital III, L.P.

MODL Management

OEP II Partners Co-Invest, L.P.

One Equity Parnters V, L.P.

W Capital Legend, L.P.

**Directors & Officers**

Adkins, Russ

Ahrens, Chris

Belinfanti, Greg

Cowger, Dina

Davenport, Roger L.

Deakyne, Michael

Donovan, Bill

Etue, Mike

Finke, Michael

Fritsch, Juergen

Hopkins, Ryan

Hughes, Matt

Hughes, Matthew P.

James, Duncan

Jenkins, Matt

Joshi, Kashyap

Kolinoski, Jason

Koll, Detlef

Musciano, Chuck

Scarboro, Ron

Twiddy, Kathryn

Twiddy, Kathy

Woodworth, David

Zajkowski, Thomas

**Government Authorities**

Acadia Parish Assessor

Acadia Parish School Board

Ada County Assessor

Adams County Assessor

AL - Income

Alabama Department Of Revenue

Alachua County Property Appraiser

Alameda County Assessor

Alaska Department Of Revenue

Alcorn County Tax Assessor

Alpena County Assessor

Arapahoe County Property Appraiser

Arizona Department Of Revenue

Ascension Parish

Assessing/Treasury Dept.

Assessor - Village Of Holmen

Assessor For Caddo Parish

Assessor For Lafayette Parrish

Assessor Of Property

Assessor-E. Baton Rouge Parish

Attleboro City Assessor

Avoyelles Parish Sales Ta

Avoyelles Parish Sales Tax

Baldwin County

Bay County Property Appraiser

Beauregard Parish Sheriff Office

Bell Central Appraisal District

Benton County Property Assessor

Bessemer Township Assessor

Bexar Appraisal District

Bienville Parish School Board

Board Of Equalization

Bossier City - Parish

Boulder County Property Appraiser

Branch County Assessor

Brazoria County Appraisal District

Brevard County Property Appraiser

Broward County Property Appraiser

Buffalo County Assessor

Caddo Shreveport

Calcasieu Parish School System

Catahoula Parish Sales Tax Fund

Charleston County Auditor's Office

Chaves County Assessor

Cherokee County Tax Dept.
City And County Of Denver
City Of Alabaster - Revenue Department
City Of Arvada
City Of Auburn
City Of Aurora
City Of Berlin Assessment Office
City Of Birmingham
City Of Boston Assessor
City Of Boulder
City Of Bowling Green
City Of Chandler
City Of Colorado Springs
City Of Cortez
City Of Corunna Assessor
City Of Decatur
City Of Durango
City Of Englewood
City Of Flushing Assessor
City Of Fort Collins
City Of Fredericksburg
City Of Glendale
City Of Golden
City Of Grand Junction
City Of Grand Rapids
City Of Grayling
City Of Greenwood Village
City Of Gulf Shores
City Of Hoover
City Of Hueytown
City Of Huntsville
City Of Lafayette
City Of Lakewood
City Of Lansing Assessor
City Of Littleton
City Of Longmont
City Of Loveland
City Of Mesa
City Of Mobile
City Of Montgomery
City Of Mount Clemens Assessor
City Of Muskegon
City Of Neenah

City Of New Orleans
City Of Northport
City Of Orange Beach
City Of Peabody
City Of Pelham
City Of Pell City
City Of Peoria
City Of Philadelphia Department Of Revenue
City Of Portland
City Of Powhatan
City Of Prescott
City Of Pueblo
City Of Robertsdale
City Of Rutland
City Of Sparta Assessor
City Of Suffolk
City Of Tempe
City Of Thornton
City Of Tucson
City Of Tuscaloosa
City Of Virginia Beach
City Of Wheat Ridge
City Of Winchester
Clark County Property Assessor
Clay County Property Appraiser
Clay County Property Assessor
Cole County Property Assessor
Colfax County Assessor
Collector Sales Tax Department
Collier County Property Appraiser
Collin Central Appraisal District
Colorado Department Of Revenue
Colorado Department Of Revenue
Commissioner Of The Revenue
Commonwealth Of Massachusetts
Comptroller Of Maryland
Comptroller Of Maryland - SUT
Comptroller Of Public Accounts
Concord Township Assessor
Concordia Parish Sales Tax Fund
Corporation Income Tax Section
County Of Mobile
Cullman County

Dallas Central Appraisal District
Davidson County Assessor
Dekalb County Revenue Department
Delaware Division Of Revenue
Denver County Property Appraiser
Department Of Finance & Administration
Department Of Revenue Services
Desoto Parish
Desoto Parish Assessor
District Of Columbia Treasurer
Doña Ana County Assessor
Douglas County Assessor
Douglas County Property Assessor
Durham County Property Assessor
East Carroll Parish Sales Tax Fund
East Feliciana Parish Sales Tax Fund
El Paso Central Appraisal District
Evangeline Parish Tax Commission
Fairfax County Dept. Of Tax Admins.
FL
Florence County Auditor
Florida Department Of Revenue
Forest Township Assessor
Fort Gratiot Township Assessor
Franklin County Property Assessor
Franklin Parish School Board
Frio County Appraisal District
GA
Georgetown Charter Township Office
Georgia Department Of Revenue
Grant Parish Sheriff's Sales Tax Fund
Granville County Property Assessor
Grayson County Appraisal District
Halifax County Property Assessor
Hall County Assessor
Hamilton County Assessor
Harris County Appraisal District
Harrison County Tax Assessor
Hawaii Department Of Taxation
Hawaii State Tax Collector
Hickman County Tax Assessor's Office
Hinds County Tax Assessor
Hockley County Appraisal District

Honorable Jim Overton
Iberia Parish School Board
Iberville Parish Sales Tax Department
Idaho State Tax Commission
Illinois Department Of Revenue
Imperial County Assessor
Indiana Department Of Revenue
Internal Revenue Service
Iowa Department Of Revenue
Jack A. Stephens
Jackson County Property Assessor
Jackson County Revenue Assessor
Jackson Parish STCA
Jasper County Property Assessor
Jefferson Davis Parish School Board
Johnson County Tax Assessor
Jones County Tax Assessor
Kansas Department Of Revenue
Kansas Dept. Of Revenue
Kenosha City Assessor
Kentucky Department Of Revenue
Kentucky State Treasurer
Kern County Assessor
King Co. Dept. Of Assessments
Kitsap Co. Dept. Of Assessments
Knox County Property Assessor
Laclede County Property Assessor
Lafayette Parish School Board
Lafourche Parish School Board
Lancaster County Assessor
Lasalle Parish Sales Tax Fund
Lauderdale County Revenue Assessor
Lincoln County Property Assessor
Lincoln Parish
Lincoln Parish Assessor
Livingston Parish School Board
Los Angeles County Property Assessor
Loudoun County Assessor's Office
Louisiana Department Of Revenue
Louisville Metro Revenue Commission
Lubbock Central Appraisal
MA
Madison County Assessor

Madison County Sales Tax  Department
Madison Parish School Board
Maine Revenue Services
Marin County Assessor
McLennan County Appraisal District
Mecklenburg County Tax Dept.
Mesa County Property Appraiser
MI
Miami-Dade County – Dept. Of Property Appraisal
Michigan Department Of Treasury
Minnesota Department Of Revenue
Minnesota Revenue
Mississippi Department Of Revenue
Missouri Department Of Revenue
Montana Department Of Revenue
Montgomery County Commission
Morehouse Sales And Use Tax Commission
Morgan County
Mr. Larry Ward, Property Assessor
Multnomah County Property Assessor
Napa County Assessor
Nash County Tax Dept.
Natchitoches Tax Commission
Nebraska Department Of Revenue
New Hanover Co. Tax Dept.
New Jersey Sales Tax
New Mexico Taxation And Revenue Department
Newell Normand, Tax Collector
Newton County Property Assessor
NH DRA
Nodaway County Property Assessor
North Carolina Department Of Revenue
North Dakota Tax Commissioner
NY
NY - MTA
NYC Department Of Finance
NYS Sales Tax Processing
Occupational Tax Administrator
Oceola Assessor's Office
Oceola Township Assessor's Office
Office Of Tax And Revenue
Office Of The City Assessor
Ohio Treasurer Of State

Okeechobee County Property Appraiser
Oklahoma Tax Commission
Oklahoma Tax Commission - Income Tax
Ontonagon County Assessor
OR
Orange County Assessor's Office
Orange County Property Appraiser
Otsego Township Assessor
Ouachita Parish Assessor
PA
PA Department Of Revenue
Palm Beach County Property Appraiser
Parish And City Treasurer
Parish Of Beauregard
Parish Of Caldwell Sales Tax Fund
Parish Of Jefferson
Parish Of Orleans
Parish Of Sabine
Parish Of St. Mary
Parish Of Union
Parish Sales Tax Fund
Pender County Property Assessor
Perry County Assessor
Phoenix City Treasurer
Pinellas County Property Appraiser
Plaquemines Parish
Plumas County Property Assessor
Pointe Coupee Parish Sales And Use Tax
Prince William County
Racine City Assessor's Office
Rankin County Tax Assessor
Rapides Parish Assessor
Rapides Parish Sales Tax Fund
Red River Tax Agency
RI
Richland Parish Tax Commission
Rita
Roanoke County Assessor's Office
Roosevelt County Assessor
Sabine Parish
Sacramento County Assessor
Sales And Use Tax Office
San Bernardino County Property Assessor

San Diego Co. Property Appraiser
San Francisco County Assessor's Office
Santa Clara Co. Property Appraiser
Santa Fe County Assessor
SC
SC Department Of Revenue
SC Dept. Of Revenue
Shelby County
Shelby County Property Assessor
Snohomish County Assessor
South Dakota State Treasurer
Spartanburg County Auditor
Spokane County Assessor
St. Charles County Property Assessor
St. Charles Parish Assessor
St. Charles Parish School Board
St. Clair County Tax Dept
St. Landry Parish School Board
St. Louis County Property Assessor
St. Martin Parish School Board
STACS
Stafford County Assessor
State Comptroller
State Of New Jersey
State Of New Jersey Division Of Taxation
State Of New Mexico
State Of NV Sales/Use
States Authorized For Business = All 50 States
Sumter County Auditor
Superior Township Assessor
Tangipahoa Parish School System
Tarrant Appraisal District
Tax Administrator
Tax Trust Acct. - ALAtax/Rds
Tennessee Department Of Revenue
Thurston County Property Assessor
TN
Torrance County Assessor
Town Of Athol Assessing
Town Of Barnstable
Town Of Framingham
Town Of Hopedale
Town Of Menomonie Assessor

Town Of Millbury
Town Of Mondovi Assessor
Town Of Southborough
Town Of Woodruff Assessor
Travis A. Hulsey, Director
Travis Central Appraisal District
Treasurer - State Of Iowa
Treasurer Of The State Of Ohio
Tuscaloosa County Special Tax Board
U.S. Department Of Labor, Occupational Safety
And Health Administration
Union Parish Sales & Use Tax Commission
Utah State Tax Commission
Uvalde County Appraisal District
Vance County Property Assessor
Ventura County Property Assessor
Vermilion Parish School Board
Vermont Department Of Taxes
Vermont Department Of Taxes
Vernon Parish Sales Tax Department
Virginia Department Of Taxation
Wake County Property Assessor
Walker County
Warren County Tax Assessor
Washington County Assessor's Office
Washington Parish Sheriff's Office
Washington State Department Of Revenue
Webster Parish School Board
West Baton Rouge Parish
West Bloomfield Township Assessor
West Carroll Parish School Board
West Feliciana Parish
West Virginia State Tax Department
WI
Williamson County Property Assessor
Williamston Assessor's Office
Wilson County Property Assessor
Winn Parish School Board Sales & Use Tax
Wisconsin Department Of Revenue
Wyoming Department Of Revenue
Yakima County Assessor
Yamhill County Property Assessor
Yoakum County Appraisal District

**Insurance**

AIG

Chubb Group of Insurance Companies

Endurance Risk Solutions Assurance Co.

Liberty Insurance Corp.

National Union Fire Ins Co of Pittsburgh

National Union Fire Ins Co of Pittsburgh (AIG)

Navigators Insurance Company

Reliance Standard

The Hartford

Wells Fargo

**Intercompany**

AllType Medical Transcription Services, Inc.

CBay Holdings Ltd.

CBay Infotech Ventures Pvt. Ltd.

Healthcare Contract Resources, Inc

Legend Acquisition Sub, Inc,

Legend Parent, Inc.

M*Modal N.V

MedQuist CM LLC

MedQuist of Delaware, Inc.

Mirrus Systems Inc.

MModal Canada Co.

MModal CB Inc.

MModal Global Services Pvt. Ltd.

MModal Holdings Inc.

MModal Inc.

MModal IP LLC

MModal Limited

MModal MQ Inc.

MModal Services Canwest ULC

MModal Services, Ltd.

MModal Systems & Services Inc.

Multimodal Technologies, LLC

MXSecure Philippines, Inc.

Poiesis Informatics, Inc.

Suyash Software Pvt. Ltd.

**Landlords**

1910 AS 202, LLC

210 Washington Pittsburgh

3637 Green Road Co., LTD.

Asian Holdings Corporation

B.U. Properties Corporation

Bill Kalyvas

Boyle 5000 Meridian Joint Venture

Brandywine Operating Partnership, L.P.

Carothers Office Acquisition LLC

CCI-B Marietta, LLC

Continental Real Estate Companies

Cross Connect Solutions

Duke Realty Limited Partnership

FirstCal Industrial 2 Acquisition, LLC

Ford Motor Land Development Corporation

Green Road Co., LTD

Hallmark Development of Fl. Inc.

Ice Factory Limited Partnership

James J. Kelly III and Geraldine Kelly

KBS Nashville Industrial Portfolio I

LA/GA Business Centers, Inc.

LCFRE Nashville Carothers, L.P.

Manard Realty, Inc.

Merebrook Properties (Malvern) Limited

Meridian C Investment, LP

Meridian Joint Venture

Meritex Royal Woods, LLC

Princess & Perimeter Building LLC

Professional Center at Westbird

RDU Center III LLC

Regus Management Group, LLC

RVD Properties, LLC

Sergio A. Barrera

Stockwood, LLC

The K Group, LLC

The Manufacturers Life Insurance Company

Willowbrook Holdings, Inc.

**<u>Letter of Credit</u>**

Liberty Mutual Insurance Company

National Union Fire Insurance Company of
Pittsburgh

Royal Bank of Canada

13

**<u>Litigation</u>**

Bruce Kenneth Maenpaa

Cheryl Flanders

Janet Brandly

Karen N. Hobbs

Kathy Goodwin-Mata Ready

Kimberly Vernon

Krishna Reddy

Mary S. Martin

RadNet

**<u>Professionals</u>**

Akin Gump Strauss Hauer & Feld LLP

Alvarez & Marsal

Blackstone

Dechert LLP

Deloitte

Houlihan Lokey

Latham & Watkins, LLP

Lazard Freres & Co.

Prime Clerk

**<u>Significant Customers</u>**

Carolinas HealthCare System

Catholic Healthcare West

Children's Hospital & Medical Center

Children's Hospital & Research Center Oakland

Duke University Health System

DukeHealth.org

Geisinger Health System

Hospital Corporation of America (HCA)

Johns Hopkins Medicine

LifePoint Hospitals

Mayo Clinic

MidState Medical Center

Penn Medicine

Scripps

Sharp Healthcare

St. Jude Heritage Medical Group

Summit Medical Group

The NeuroMedical Center

The University of Texas MD Anderson Cancer
Center

University of Colorado Hospital
University of Minnesota Medical Center
University of Tennessee Medical Center

**<u>Utility Vendors</u>**
AT&T
Bellsouth
Business Svcs
Cingular Wireless
Clear Connections
Consolidated Communications
Earthlink Inc.
First Communications LLC
Frontier
HTC
J2 Global Communications
Level 3 Communications LLC
Lightyear Network Solutions
McCollisters
MCI Communications Services, INC. dba Verizon
MCI Worldcom
Minerva Network Systems, INC
Monmouth Internet Corp
National Telecommunications Network, INC.
Nationlink Wireless Corporate
Nextel Communications
Paetec Communications, Inc.
Primus Telecommunications, INC
Qwest Corporation
Radio Telephone of Maine
Savvis, INC.
SBC
Schuykill Mobile Fone, INC.
Skytel
Souris River Telecommunication
Sprint
Sprint PCS
The Conference Group LLC
US Bancorp Vendor Services
US Treasury
USA Mobility Wireless, INC.
Verizon Wireless Services LLC
Voip Networks

Windstream Corporation
XO
XO Communications
XO Holding
XO Interactive
XO One
YP Southeast Advertising & Publishing, LLC

**Workers Compensation Claims**

Allen, Barbara
Anderson, Allison
Anderson, Tracy
Blow, Tammy
Boyer, Tony
Chavda, Patrice
D'Alessandro, Marybeth
Davis, Debra
Deleon, Susan
Estopare, Marijean
Felten, Leslie
Flynn, Joan
Grant, Cindy
Gray, Kathleen A
Grizoffi, Steven
Henry, Audrey
Johnsen, Mary N
Kubinek, Joyce
Lawton, Andrea
Lewis, Susan
Lindsay, Juliet
Pope, Candace
Poulin, Susan M
Ward, Marc

**U.S. Trustee's Office - Region 2 - Trial Attorneys**

Andrea B. Schwartz
Andy Velez-Rivera
Brian S. Masumoto
Greg M. Zipes
Linda A. Riffkin
Michael Driscoll
Nazar Khodorovsky
Paul K. Schwartzberg

16

Richard C. Morrissey

Serene Nakano

Susan Golden

**U.S. Trustee's Office - Region 3 - Trial Attorneys**

Benjamin Hackman

David Buchbinder

Jane Leamy

Juliet Sarkessian

Mark Kenney

Richard Schepacarter

T. Patrick Tinker

Tiiara Patton

**U.S. Bankruptcy Court Judges - District of Delaware**

Chief Judge Kevin Gross

Judge Brendan L. Shannon

Judge Christopher S Sintchi

Judge Kevin J. Carey

Judge Mary F. Walrath

Judge Peter J. Walsh

**U.S. Bankruptcy Court Judges - Southern District  of New York**

Chief Judge Cecelia G. Morris

Judge Allan L. Gropper

Judge Burton R. Lifland

Judge James M. Peck

Judge Martin Glenn

Judge Robert D. Drain

Judge Robert E. Gerber

Judge Sean H. Lane

Judge Shelley C. Chapman

Judge Stuart M. Bernstein

**U.S. District Court Judges - District of Delaware**

Chief Judge Gregory M. Sleet

Judge Caleb M. Wright

Judge Caleb Rodney Layton, III

Judge Edward Green Bradford

Judge Edward Green Bradford, II

Judge Edwin DeHaven Steel, Jr.

17

Judge Gunning Bedford, Jr.

Judge Hugh Martin Morris

Judge James L. Latchum

Judge Jane R. Roth

Judge John Fisher

Judge John P. Nields

Judge Joseph J. Farnan, Jr.

Judge Joseph J. Longobardi

Judge Kent A. Jordan

Judge Leonard Eugene Wales

Judge Leonard P. Stark

Judge Murray M. Schwartz

Judge Paul C. Leahy

Judge Richard G. Andrews

Judge Richard S. Rodney

Judge Roderick R. McKelvie

Judge Sue L. Robinson

Judge Walter K. Stapleton

Judge Willard Hall

Magistrate Judge Christopher J. Burke

Magistrate Judge Mary Pat Thynge

Magistrate Judge Sherry R. Fallon

**U.S. District Court Judges - Southern District of New York**

Chief Judge Loretta A. Preska

Chief Magistrate Judge Kevin N. Fox

Judge Alison J. Nathan

Judge Alvin K. Hellerstein

Judge Analisa Torres

Judge Andrew L. Carter Jr.

Judge Cathy Seibel

Judge Charles S. Haight

Judge Colleen McMahon

Judge Deborah A. Batts

Judge Denise L. Cote

Judge Edgardo Ramos

Judge George B. Daniels

Judge Harold Baer

Judge J. Paul Oetken

Judge Jesse M. Furman

Judge John F. Keenan

Judge John G. Koeltl

Judge Katherine B. Forrest

Judge Katherine Polk Failla

Judge Kenneth M. Karas

Judge Kevin T. Duffy

Judge Kimba M. Wood

Judge Laura Taylor Swain

Judge Leonard B. Sand

Judge Lewis A. Kaplan

Judge Lorna G. Schofield

Judge Louis L. Stanton

Judge Miriam Goldman Cedarbaum

Judge Naomi Reice Buchwald

Judge Nelson S. Roman

Judge P. Kevin Castel

Judge Paul A Engelmayer

Judge Paul A. Crotty

Judge Paul G. Gardephe

Judge Richard J. Sullivan

Judge Richard M. Berman

Judge Richard Owen

Judge Robert P. Patterson

Judge Robert W. Sweet

Judge Ronnie Abrams

Judge Shira A. Scheindlin

Judge Sidney H. Stein

Judge Thomas P. Griesa

Judge Valerie E. Caproni

Judge Vernon S. Broderick

Judge Victor Marrero

Judge Vincent L. Briccetti

Judge William H. Pauley III

Magistrate Judge Andrew J. Peck

Magistrate Judge Debra Freeman

Magistrate Judge Frank Maas

Magistrate Judge Gabriel W. Gorenstein

Magistrate Judge George A. Yanthis

Magistrate Judge Henry Pitman

Magistrate Judge James C. Francis

Magistrate Judge James L. Cott

Magistrate Judge Lisa Margaret Smith

Magistrate Judge Martin R. Goldberg

Magistrate Judge Michael H. Dolinger

Magistrate Judge Paul E. Davison

Magistrate Judge Ronald L. Ellis

Magistrate Judge Sarah Netburn

**U.S. Court of Appeals Judges for the Second Circuit**

Chief Judge Robert A. Katzmann

Judge Amalya L. Kearse

Judge Barrington D. Parker

Judge Chester J. Straub

Judge Christopher F. Droney

Judge Debra Ann Livingston

Judge Dennis Jacobs

Judge Denny Chin

Judge Gerard E. Lynch

Judge Guido Calabresi

Judge John M. Walker, Jr.

Judge Jon O. Newman

Judge Jose A. Cabranes

Judge Peter W. Hall

Judge Pierre N. Leval

Judge Ralph K. Winter

Judge Raymond J. Lohier, Jr.

Judge Reena Raggi

Judge Richard C. Wesley

Judge Robert D. Sack

Judge Rosemary S. Pooler

Judge Susan L. Carney

**U.S. Court of Appeals Judges for the Third Circuit**

Chief Judge Theodore A. McKee

Judge Anthony J. Scirica

Judge D. Brooks Smith

Judge D. Michael Fisher

Judge Dolores Sloviter

Judge Franklin S. Van Antwerpen

Judge Jane R. Roth

Judge Joseph A. Greenaway, Jr.

Judge Joseph F. Weis

Judge Julio M. Fuentes

Judge Kent A. Jordan

Judge Leonard I. Garth

Judge Marjorie O. Rendell

Judge Maryanne Trump Barry
Judge Michael A. Chagares
Judge Morton I. Greenberg
Judge Patty Shwartz
Judge Richard L. Nygaard
Judge Robert E. Cowen
Judge Ruggero J. Aldisert
Judge Thomas I. Vanaskie
Judge Thomas L. Ambro
Judge Thomas M. Hardiman
Judge Walter K. Stapleton

**Secured Lenders**
AIG
Blackstone Group
Claymore Advisors
Deutsche Bank AG
Exim Bank
FMR LLC
Guggenheim
IG Investment Management
John Hancock Advisers
Mackenzie Financial Corp
Manulife Asset Management
Principal Financial Group
Prudential Financial
Safety Group
SEI Investment Management
T Rowe Price Associates
Virtus Investment Advisers

**Unsecured Lenders**
Ameriprise Financial
Blackstone
Chubb Group
Erste Sparinvest KAGMBH
Federated Investors
John Hancock
Nationwide Fund Advisors
New York Life Group
Pax World Management
Rochdale Investment Management
Smith Barney Fund Management

Sun Life Financial
UBI Management Co
UBI Pramerica SGR

**Other Lenders**

Bank of America, N.A.
ING Capital LLC
Merrill Lynch, Pierce, Fenner & Smith Incorporated
RBC Capital Markets
Royal Bank of Canada
Sumitomo Mitsui Banking Corporation
SunTrust Bank
Suntrust Robinson Humphrey, Inc.

**Schedule B**

**Potential Connections or Related Parties**

**Current and Former Clients of A&M and/or its Affiliates**[1]

3M
AGFA
AIG
Aramark Corporation
AT&T
Blackstone
BNP Paribas Fortis
Chubb Group of Insurance Companies
CIBC
City of Huntsville
City of New Orleans
Citibank
Commonwealth of Massachusetts
Deloitte
Deutsche Bank
General Electric
Guggenheim
Harris County Appraisal District
Hospital Corporation of America
HSBC
KPMG LLP
John Hancock
JP Morgan Chase
LifePoint Hospitals
Louisiana Department of Revenue
Manufacturers Life Insurance Company Marsh USA Inc.
McGladrey & Pullen
National Union Fire Ins. Co of Pittsburgh
Nuance Communications
OptumHealth
Oracle Corporation
PNC
Pricewaterhousecoopers LLP
Principal Financial Group
Prudential Financial, Inc.
Qwest Corporation
Royal Bank of Canada
Santa Clara County

---

[1]    A&M and/ or an affiliate is currently providing or has previously provided certain consulting or interim management services to these parties or their affiliates (or, with respect to those parties that are investment funds or trusts, to their portfolio or asset managers or their affiliates) in wholly unrelated matters.

SBC
State Bank of India
Sprint
Staples, Inc.
Sun Life Financial
SunTrust
T. Rowe Price Group, Inc.
The Hartford
United Health Care Insurance Co.
US Bank National Association
US Bancorp
Verizon Wireless Services LLC
Wells Fargo Equipment Finance

**Significant Equity Holders of Current and Former A&M Clients**[2]
AIG
Ameriprise  Financial
Aramark Corporation
AT&T
Blackstone
BNP Paribas Fortis
CIBC
Citibank
Chubb Group of Insurance Companies
Deutsche Bank
FMR LLC
General Electric
Guggenheim
HSBC
John Hancock
JP Morgan Chase
Lazard Freres & Co.
LifePoint Hospitals
Mackenzie Financial Corporation
Manufacturers Life Insurance Company
Marsh USA Inc.
Mayo Clinic
McGladrey & Pullen LLP
New York Life Group
PNC
PricewaterhouseCoopers

---

[2]    These parties or their affiliates (or, with respect to those parties that are investment funds or trusts, their portfolio or asset managers or other funds or trusts managed by such managers) are significant equity holders of clients or former clients of A&M or its affiliates in wholly unrelated matters.

Prudential Financial, Inc.
Royal Bank of Canada
SEI Investments Co.
Smith Barney Fund Management
Sprint
Sun Life Financial
SunTrust
T. Rowe Price Group, Inc.
The Hartford
US Bank National Association
Wells Fargo Equipment Finance

**Creditors in A&M Engagements**[3]
3M
Akin Gump Strauss Hauer & Feld LLP
AT&T
BNP Paribas Fortis
Catholic Healthcare West
Citibank
Deutsche Bank
FMR LLC
HSBC
JP Morgan Chase
New York Life Group
Oracle Corporation
PNC
Reliance Standard
SBC
Scripps Health
Sharp Healthcare
Sprint
State Bank of India
T. Rowe Price Group, Inc
US Bank National Association
USA Mobility Wireless, Inc.
Verizon Wireless Services LLC
Wells Fargo Equipment Finance
XO Communications
Windstream Corporation

---

[3]   A&M is currently advising or has previously advised these parties or their affiliates (or, with respect to those parties that are investment funds or trusts, their portfolio or asset managers or other funds managed by such managers) as creditors or various official creditors' committees in which these parties or their affiliates were members or which represented the interests of these parties or their affiliates.

**<u>Members of Noteholders Group</u>**[4]
BNP Paribas Fortis
CIBC
Deutsche Bank
FMR LLC
PNC
Royal Bank of Canada
US Bank National Association
Wells Fargo Equipment Finance

**<u>Professionals & Advisors</u>**[5]
Akin Gump
Blackstone
Dechert
Deloitte
Duane Morris
Houlihan Lokey
K&L Gates
Latham & Watkins, LLP
Lazard Freres
PricewaterhouseCoopers
Prime Clerk

**<u>Significant Joint Venture Partners</u>**[6]
3M
AT&T
Duke Realty
John Hancock
JP Morgan Chase
Sprint

---

[4]    A&M is currently advising or has previously advised various official or unofficial noteholders' committees in which these parties or their affiliates (or, with respect to those parties that are investment funds or trusts, their portfolio or asset managers or other funds managed by such managers) were members or which represented the interests of these parties or their affiliates.

[5]    These professionals have represented clients in matters where A&M was also an advisor (or provided interim management services) to the same client. In certain cases, these professionals may have engaged A&M on behalf of such client.

[6]    These parties or their affiliates are significant joint venture partners of other clients or former clients of A&M or its affiliates in wholly unrelated matters.

**Board Members**[7]

Judge Anthony J, Scirica
Judge Barrington D. Parker
Judge Jose A. Cabranes
Judge Theodore A. McKee

**A&M Vendors**[8]
AIG
Aramark Corporation
AT&T
Blackstone
BNP Parsbas Fortis
Chubb Group of Insurance Companies
Citrix Online Division
Dell Financial Service LP
Deloitte
Deutsche Bank
Duane Morris LLP
Houlihan Lokey
John Hancock
KPMG LLP
Latham & Watkins, LLP
Manufacturers Life Insurance Company
Marsh USA Inc.
McGladrey & Pullen LLP
National Union Fire Ins. Co of Pittsburgh
New York Life Group
NY-MTA
Oracle Corporation
Pricewaterhousecoopers LLP
PAX World
PNC
Prudential Financial, Inc.
Regus Management Group LLC
Savvis, Inc.
SBC
SHI International Corporation
Sprint
Staples

---

[7]    These parties or their affiliates are board members (or members of the board of trustees or similar governing or oversight bodies) of other clients or former clients of A&M or their affiliates in wholly unrelated matters.

[8]    These parties or their affiliates provide or have provided products, goods and/or services (including but not limited to legal representation) to A&M and/or its affiliates.

Sunguard Availability Services
RDS AlaTax Trust Account
The Conference Group LLC
The Hartford
US Bank Equipment Finance
Verizon Wireless Services LLC
Wells Fargo Equipment Finance

# **EXHIBIT B**

**Engagement Letter**

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

October 31, 2013

Duncan James
Chief Executive Officer
5000 Meridian Blvd., Suite 200
Franklin, TN 37067

Dear Mr. James:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal North America, LLC ("A&M") and MModal Inc. on behalf of itself and its subsidiaries and their respective assigns and successors (jointly and severally, "MModal" or the "Company"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below, and receipt of the retainer described below, this letter will constitute an agreement between the Company and A&M (the "Agreement"). In addition, as of the date hereof, that certain engagement agreement between the Company, A&M and its subsidiary (Alvarez & Marsal Securities, LLC) will be deemed to have terminated in accordance with its terms provided that those provisions of such prior engagement agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

1.    Description of Restructuring Advisory Services

   (a) A&M shall provide consulting services to the Company at the direction of the Company's Chief Executive Officer and/or his designees (the "Responsible Officer(s)") in connection with the Company's efforts to refine its business plan, improve the Company's financial and operating performance and assist the Company in its reorganization efforts. It is anticipated that A&M's activities shall include the following:

      (i)     assistance in refining the Company's current business plan and in the preparation of a revised operating plan, balance sheet & cash flow forecast (including covenants) and presentation of such plan and forecast to the Company's Board of Directors (the "Board") and its creditors;

      (ii)    assistance in the identification, quantification, execution and monitoring of cost reduction and operational improvement opportunities;

      *(iii)*    *assistance in the development and management of a 13-week receipts and disbursements based cash flow forecast;*

      *(iv)*    *assistance in communications with creditors;*

      *(v)*    *coordination with any investment banker hired by the Company;*

      *(vi)*    *assistance in the development of presentations and communications to rating agencies, secured lenders and noteholders; and*

      *(vii)*    *other activities as are approved by you, the Responsible Officers or the Board and agreed to by A&M.*

(b)  David Coles of A&M will be the overall engagement leader on this assignment. He will be assisted by other A&M personnel, as appropriate. In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates. Such affiliates are wholly-owned by A&M's parent company and employees.

Subject to Section 8, A&M personnel providing services to the Company may also work with other A&M clients in conjunction with unrelated matters.

2.     <u>Information Provided by the Company and Forward Looking Statements</u>

The Company shall use all reasonable efforts to: (i) provide A&M with access to senior executive officers and other representatives of the Company (collectively, the "Representatives"); and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that A&M reasonably request in connection with the services to be provided to the Company. A&M shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company or the Representatives and otherwise reviewed by A&M in connection with the services performed for the Company. The Company acknowledges and agrees that A&M is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. A&M is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Board to do so. Notwithstanding anything to the contrary herein, A&M agrees that it shall not contact or



communicate with any officers or employees of the Company with respect to the matters contained herein without the prior consent of the Responsible Officer(s) or the Board.

You understand that the services to be rendered by A&M may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, A&M will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3.    <u>Limitation of Duties</u>

A&M makes no representation or guarantee that, inter alia, (i) an appropriate restructuring transaction, restructuring proposal or strategic alternative can be formulated for the Company (ii) any restructuring transaction, restructuring proposal or strategic alternative presented to the Company's management or the Board or Responsible Officers will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) any restructuring transaction in general or any transaction in particular is the best course of action for the Company or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, A&M does not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction, which determination shall rest with the Company and the Board. A&M shall be responsible for assistance with the implementation only of the restructuring proposal or strategic alternative approved by the Board or Responsible Officers and only to the extent and in the manner authorized by and directed by the Board or Responsible Officers and agreed to by A&M.

It is understood and agreed that A&M's services hereunder will not include providing any tax advice or developing any tax strategies for the Company. It is further understood and agreed that A&M's services hereunder will not include the preparation of a due diligence report, presentation or otherwise for the Company, except as provided below in Section 4(a). If you should request additional services not otherwise contemplated by this letter agreement, the Company and A&M will enter into an additional letter agreement which will set forth the nature and scope of the services, appropriate compensation and other customary matters, as mutually agreed upon by the Company.

The Company acknowledges and agrees that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

The Company understands that A&M is not undertaking to provide any legal, regulatory, accounting, insurance, tax or similar professional advice.



4.    <u>Compensation</u>

(a) A&M will receive fees based on the following hourly rates:

| | |
|---|---|
| Managing Directors | $675-875 (Coles $775) |
| Directors | $475-675 (Schipani $625) |
| Analysts/Associates | $275-475 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

(b) In addition, A&M will be reimbursed for its reasonable and documented out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, messenger and telephone charges.

(c) All fees and such expenses will be billed and payable on a monthly basis or, at A&M's discretion, more frequently.

(d) The Company shall promptly remit to A&M a retainer in the amount of $275,000, which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.

5.    <u>Term</u>

(a) This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated with immediate effect by either party without cause by written notice to the other party.

(b) A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts within a reasonable time period, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause exists.

(c) On termination of the Agreement, any fees and expenses accrued prior to such termination and due to A&M pursuant to the terms of this Agreement shall be



remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination).

(d) The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6.    Relationship of the Parties

The parties intend that an independent contractor relationship will be created by this engagement letter. Neither A&M nor any of its personnel or agents is acting as a fiduciary of the Company, the security holders or creditors of the Company or any other persons in connection with this engagement. Neither A&M nor any of its personnel or agents is to be considered an employee or agent of the Company and the personnel and agents of A&M are not entitled to any of the benefits that the Company provides for the Company employees.

7.    No Third Party Beneficiary

The Company acknowledges that all advice (written or oral) provided by A&M to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

8.    Conflicts

A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "Firm") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained;



provided, however, during the term of this engagement and for one year thereafter the A&M personnel providing services hereunder will not represent the interests of any such entities or people in connection with a Company restructuring.

9.    <u>Confidentiality / Non-Solicitation</u>

During the term of this Agreement and for 24 months after the expiration or any termination of this Agreement, A&M agrees to keep confidential, and not to use or disclose for any purpose, other than as requested by the Company or its legal counsel or as reasonably required by the terms of and in the performance of the obligations under this Agreement, all non-public information provided to it by or on behalf of the Company (the "<u>Confidential Information</u>").    Notwithstanding the foregoing, Confidential Information does not include any information that is or becomes available to A&M or its representatives on a non-confidential basis from a source (other than, directly or indirectly, the Company or its representatives) which to A&M's knowledge had no obligation to the Company or any other party to maintain the confidentiality of such information.    A&M may disclose Confidential Information as required by law or regulation, pursuant to a subpoena or order of a court of competent jurisdiction; provided, that A&M shall (and shall cause the A&M Affiliates to), to the extent permitted by law, give the Company prior written notice of such order or request for disclosure so that the Company may seek, at the Company's sole expense, an appropriate protective order or otherwise seek to protect the confidentiality of such information, which efforts, at the Company's request and expense, A&M will reasonably cooperate with.

Notwithstanding any provision herein to the contrary, A&M may disclose Confidential information to the personnel of A&M and A&M's Affiliates and representatives whenever A&M reasonably determines that such disclosure is necessary to provide the services contemplated hereunder; provided, that such A&M personnel, Affiliates and representatives are obligated to comply with the restrictions set forth herein with respect to such Confidential Information.    A&M shall be responsible for any breach of this Agreement by any of A&M's personnel, Affiliates or representatives and A&M agrees, at its sole expense, to take all reasonable measures (including but not limited to court proceedings) to restrain A&M's personnel, Affiliates and representatives from prohibited or unauthorized disclosure or use of any Confidential Information.–Notwithstanding anything to the contrary contained herein, the confidentiality and use obligations in this Section 11 shall have no effect on or application to the acts and omissions of any Representatives who have not received nonpublic information, directly or indirectly, from or on behalf of the Company in connection with this engagement, even if such Representatives receive identical information in a separate context.



At the expiration, termination or completion of this Agreement, A&M will (and shall cause the A&M Affiliates, personnel and representatives to) return to the Company or destroy (to the extent practicable for electronic copies) all copies of any documentary Confidential Information provided to it by or on behalf of the Company.    Any documentary Confidential Information retained by A&M or the A&M Affiliates or representatives after the expiration, termination or completion of this Agreement shall remain subject to this Section 11.    Notwithstanding anything to the contrary, A&M may retain, subject to its confidentiality obligations which confidentiality obligations will be extended for such period of time as A&M retains any of the Company's information and documents, one copy of the Company's information and documents (including, without limitation, documentary nonpublic information provided to A&M by or on behalf of the Company) for internal record keeping purposes, but only for that period of time necessary to evidence compliance with this Agreement or other legal requirements.

The Company, on behalf of itself and its subsidiaries agrees that, until two (2) years subsequent to the termination of this engagement, (a) it will not solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who the Company knew worked on this engagement while employed by A&M or its affiliates ("Company Known A&M Solicited Person") and (b) no employee of OEP Parent LLC involved in this engagement will solicit, recruit, hire or otherwise engage on behalf of OEP Parent LLC or any of its controlled affiliates any employee of A&M or any of its affiliates who such OEP employee knew worked on this engagement while employed by A&M or its Affiliates ("OEP Known A&M Solicited Person" and together with Company Known A&M Solicited Person, as applicable, "A&M Solicited Person"), or otherwise refer or introduce any OEP Known A&M Solicited Persons to any controlled affiliate of OEP Parent LLC in the context of a potential hiring of such person by such controlled affiliate; provided that a generalized solicitation for employees through advertisements or search firms shall not, alone, be deemed a breach of this provision.    Notwithstanding the prior sentence, the Company and its subsidiaries and affiliates shall not be precluded from soliciting, recruiting or hiring any A&M Solicited Person whose employment with A&M or any of the A&M Affiliates terminated at least four months prior to the commencement of any employment discussions with such A&M Solicited Person.    Should the Company or any of its subsidiaries or OEP Parent LLC or any of its controlled affiliates extend an offer of employment to or otherwise engage any A&M Solicited Person (arising from a violation of the terms of this paragraph) and should such offer be accepted A&M shall be entitled to a fee from the party extending such offer equal to the A&M Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Company acknowledges and agrees that this fee fairly represents the loss



that A&M will suffer if the Company breaches this provision. The fee shall be payable at the time of the A&M Solicited Person's acceptance of employment or engagement.

A&M agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of the Company or any of its subsidiaries with whom A&M worked directly in connection with this engagement while employed by Company or its affiliates ("Company Solicited Person"); provided this shall not prohibit the generalized solicitation for employees through advertisements or search firms. Notwithstanding the prior sentence, A&M and its subsidiaries and affiliates shall not be precluded from soliciting, recruiting or hiring any Company Solicited Person whose employment with Company or any of the Company affiliates terminated at least four months prior to the commencement of any employment discussions with such Company Solicited Person.

10.    Indemnification and Limitations on Liability

The attached indemnification and limitation on liability agreement is incorporated herein by reference and shall be executed upon the acceptance of this Agreement. Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect.

11.    Miscellaneous

This Agreement (together with the attached indemnity provisions), including, without limitation, the construction and interpretation thereof and all claims, controversies and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the State of New York, without regard to principles of conflict of law that would defer to the laws of another jurisdiction. The Company and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder. The Company and A&M agree, to the extent permitted by applicable law, that any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement.

This Agreement may not be assigned nor may the obligations of a party hereunder be delegated without the prior written consent of the other party hereto. The obligations of



this Agreement shall be binding upon and shall only inure to the benefit of the parties hereto, the Indemnified Parties (as defined in Schedule A attached hereto) and any of their successors, permitted assigns, heirs and personal representatives. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company and A&M. The invalidity or unenforceability of any provision in this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

A&M may not reference or list the Company's name and/or logo and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website without the prior written consent of the Company, provided that, (a) after the Company becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, such consent not to be unreasonably withheld and (b) nothing herein shall restrict A&M's use of the Company's name in required relationship and/or conflicts disclosures (ie, in bankruptcy matters in which A&M is retained or seeks to be retained and the Company is a party in interest).

This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against A&M because this Agreement was drafted by A&M, and the parties waive any statute or rule of law to such effect.

The Company has the requisite power and authority to enter into this Agreement and the transactions contemplated hereby. This Agreement has been duly and validly authorized by all necessary action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.



If the foregoing is acceptable to you, kindly sign where indicated below to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By: _____
Name: David Coles
Title:   Managing Director

Accepted and agreed:

MModal Inc.

By: _____
Name: Duncan James
Title: Chief Executive Officer

## INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

This indemnification and limitation on liability agreement is made part of an agreement, dated October 31, 2013 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") by and between Alvarez & Marsal North America, LLC, on the one hand, and MModal Inc. (the "Company"), on the other, for services to be rendered to the Company by A&M.

A.    The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and reasonable and documented out-of-pocket expenses, including the reasonable documented out-of-pocket costs for counsel or others in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily from such Indemnified Party's gross negligence, bad faith or willful misconduct, and to the extent the Company has already paid any amounts hereunder with respect to indemnifying or reimbursing such Indemnified Party for such non-indemnifiable claim, such Indemnified Party shall reimburse the Company for such amounts promptly after such final determination.  The Company also agrees that in no event shall any Indemnified Party have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily from such Indemnified Party's gross negligence, bad faith or willful misconduct.  In no event will the Company or any Indemnified Party have any liability to the other for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  The Company further agrees that it will not, without the prior consent of an Indemnified Party (which consent shall not be unreasonably withheld, conditioned or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.  The Company will not be liable to any Indemnified Party for any settlement, compromise or consent to the entry of any

judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder effected by any Indemnified Party without the prior consent of the Company (which consent shall not be unreasonably withheld, conditioned or delayed).

B.    These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its reasonable and documented out-of-pocket expenses, including the reasonable and documented out-of-pocket fees and expenses of its counsel. The Company will not, however, be required to pay any such indemnification and reimbursement to an Indemnified Party to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily from such Indemnified Party's gross negligence, bad faith or willful misconduct, and to the extent the Company has already paid any amounts hereunder with respect to indemnifying or reimbursing such Indemnified Party for such non-indemnifiable claim, such Indemnified Party shall reimburse the Company for such amounts promptly after such final determination

C.    If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, including any pending or threatened claim or demand by a third party, such Indemnified Party will promptly notify the Company in writing of such claim, action, proceeding or investigation, describing in reasonable detail, to the extent known, the facts and circumstances with respect to the subject matter of such claim, action, proceeding or investigation; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action. The Company shall promptly pay reasonable and documented out-of-pocket expenses incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Company hereby

accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, at any time, in lieu of paying the expenses of separate counsel for such Indemnified Party, assume the defense and control of such matter and provide such Indemnified Party with legal representation by the same counsel who represents the Company at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall reasonably determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable and documented out-of-pocket expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.     In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.     In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Company, the Company shall promptly pay all reasonable and documented out-of-pocket expenses incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission

of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Company will also promptly pay the Indemnified Parties for any reasonable and documented out-of-pocket expenses incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.      Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.      The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

MMODAL INC.                                    ALVAREZ & MARSAL NORTH AMERICA,

LLC

By: _____                    By: _____



## **EXHIBIT C**

**Proposed Form of Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
                                                          :
In re:                                                    :        Chapter 11
                                                          :
LEGEND PARENT, INC., *et al.*,                            :        Case No. 14-10701 (REG)
                                                          :
         Debtors.                                         :        Jointly Administered
                                                          :
-------------------------------------------------------- X

**ORDER APPROVING THE DEBTORS' APPLICATION**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF ALVAREZ & MARSAL**
**NORTH AMERICA, LLC AS RESTRUCTURING ADVISOR FOR THE DEBTORS**
**_NUNC PRO TUNC_ TO THE PETITION DATE**

Upon consideration of the application (the "**Application**")[1] of the Debtors for entry of an order pursuant to Bankruptcy Code section 327(a) authorizing the Debtors to employ and retain Alvarez & Marsal North America, LLC as restructuring advisors, *nunc pro tunc* to the Petition Date on the terms set forth in the Engagement attached to the Application as <u>Exhibit B</u>; and upon the Declaration of David J. Coles in support of the Application attached to the Application as <u>Exhibit A</u> and the First Day Declaration; and due and adequate notice of the Application having been given; and the Court being satisfied that A&M is a "disinterested person" as such term is defined under section 101(14) of the Bankruptcy Code; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by this Application is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted to the extent provided herein; and it is further

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

ORDERED that pursuant to section 327(a) of the Bankruptcy Code, the Debtors are hereby authorized to retain A&M solely as restructuring advisors to the Debtors, *nunc pro tunc* to the Petition Date on the terms set forth in the Engagement Letter, subject to the terms of this Order; and it is further

ORDERED that the Indemnification Agreement is approved; and it is further

ORDERED that A&M shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, and the applicable provisions of the Bankruptcy Rules, the Local Rules, any fee and expense guidelines of this Court, and such other procedures as may be fixed by order of the Court; and it is further

ORDERED that the terms of the Engagement Letter, including without limitation, the compensation provisions and the indemnification provisions, are reasonable terms and conditions of employment and are hereby approved; and it is further

ORDERED that all requests by Indemnified Parties for the payment of indemnification as set forth in the Engagement Letter shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided, however*, that in no event shall any Indemnified Party be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any) as a result of gross negligence or willful misconduct; and it is further

ORDERED that in no event shall Indemnified Parties be indemnified if the Debtors or a representative of the estate, assert a claim for, and a court determines by final order

2

14-10701-jlg    Doc 49    Filed 03/26/14    Entered 03/26/14 16:54:32    Main Document
Pg 75 of 76

that such claim arose out of, A&M's own bad faith, self-dealing, breach of fiduciary duty (if any) as a result of gross negligence or willful misconduct; and it is further

ORDERED that in the event an Indemnified Party seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in A&M's own applications, both interim and final, and such invoices and time records shall be subject to the Local Rules, any fee and expense guidelines of this Court, and such other procedures as may be fixed by order the Court, and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and it is further

ORDERED that at least ten (10) business days' notice must be provided by A&M to the Debtors, the U.S. Trustee, and counsel to any statutory committee of creditors prior to any change in A&M's hourly rates, and such notice must be filed with the Court; and it is further

ORDERED that the U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code; and it is further

ORDERED that the Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application; and it is further

3

ORDERED that notwithstanding anything to the contrary contained herein, any

payment to be made, or authorization contained hereunder shall be subject to the requirements

imposed on the Debtors under any order regarding the use of cash collateral; and it is further

ORDERED that this Order shall be immediately effective and enforceable upon

its entry; and it is further

ORDERED that to the extent there is inconsistency between the terms of the

Engagement Letter, the Application, and this Order, the terms of this Order shall govern; and it is

further

ORDERED that this Court shall retain jurisdiction with respect to all matters

arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2014
New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE